**Docket No. 17-55070**

_____

_____

IN THE

**UNITED STATES CIRCUIT COURT OF APPEALS**

FOR THE

**NINTH CIRCUIT**

_____

MELAD YOUSSOFI

Plaintiff – Appellant,

v.

WELLS FARGO BANK, N.A.

Defendant – Appellee.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Case No. 3:16-cv-01330-MMA-JMA – Honorable Michael M. Anello

_____

**APPELLANT'S OPENING BRIEF**

_____

Alex Asil Mashiri, Esq.
**Mashiri Law Firm**
A Professional Corporation
11251 Rancho Carmel Dr. #500694
San Diego, CA 92150
Tel: (858) 348-4938
Fax: (858) 348-4939

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES…………………………………….…….....……….iv

I.     JURISDICTIONAL STATEMENT…………………………...…………..1

    A.     Basis For The District Court's Jurisdiction……………….………..1

    B.     Basis For The Court Of Appeals Jurisdiction………………...……..1

II.    STANDARD OF REVIEW…………………………………………………1

III.   ISSUES PRESENTED…………………….……………………….…… 2

IV.    PRIMARY AUTHORITY………………………………………………...2

    A.     The United States Constitution…………………………………..2

    B.     The Federal Arbitration Act……………….……………………..2

V.     SUMMARY OF ARGUMENT…………………………………………...5

VI.    STATEMENT OF THE CASE………………………………………9

    A.     Underlying Facts……………………………………………...9

    B.     Allegations In Appellant's Complaint………………………………10

    C.     Procedural Background……………………………….....………...11

VII.   ARGUMENT……………………………………...……………………….12

    A.     The District Court's Order Compelling Appellant To Arbitration Should Be Reversed Because There Is No Valid Agreement To Arbitrate Between Appellant And Appellee.......................................12

        1.     There Was No Mutual Assent...................................................13

        2.     There Was No Adequate Incorporation By Reference..............15

## TABLE OF CONTENTS (continued)

PAGE(S)

B.   The District Court's Order Compelling Appellant To Arbitration
     Should Be Reversed Because Appellant Did Not Knowingly,
     Voluntarily And Intelligently Waive His First Amendment Right Under
     The Petition Clause To Prosecute This Case In a Judicial Forum........21

     1.   Appellant Has A Constitutional Right Under The Petition Clause
          Of The First Amendment To Prosecute His Case In A Judicial
          Forum.........................................................................................23

     2.   Appellant Did Not Knowingly, Voluntarily And Intelligently
          Waive His First Amendment Right Under The Petition Clause
          To Prosecute This Case In A Judicial Forum...........................24

          a.   A Person Can Only Waive His First Amendment Right If
               The Waiver Was Knowing, Voluntary, And
               Intelligent........................................................................24

          b.   Courts Generally Use Five Factors To Determine Whether
               A Waiver Of A Constitutional Right Was Knowing,
               Voluntary, And Intelligent..............................................25

          c.   Applying The Five-Factor Test In Tthis Case Supports
               Petitioner's Position That He Did Not Knowingly,
               Voluntarily, And Intelligently Waive His First
               Amendment Right.............................................................27

               1.   The Arbitration Agreement Is One Of
                    Adhesion...............................................................27

               2.   There Was Great Disparity In Bargaining
                    Power....................................................................28

               3.   There Was No Consideration................................29

               4.   Appellant's Level Of Sophistication Is
                    Considerably Less Than Appellees......................29

# TABLE OF CONTENTS (continued)

PAGE(S)

        5.    The Waiver In The Arbitration Agreement Is Inconspicuous.......................................................30

C.    The District Court's Order Compelling Appellant To Arbitration Should Be Reversed Because The Arbitration Agreement Between Appellant And Appellee Was Unconscionable........................................................31

    1.    Appellee's Arbitration Clause Is Procedurally Unconscionable.........33

        a.    The Arbitration Clause Involves An Element Of Oppression................................................................33

        b.    The Arbitration Clause Involves An Element Of Surprise.......35

    2.    Appellee's Arbitration Clause Is Substantively Unconscionable.......38

        a.    Appellee's Arbitration Clause Lacks Mutuality......................39

        b.    Appellee's Arbitration Clause Is Substantive Unconscionable Because It Limits Appellant's Right To Discovery.................47

        c.    Appellee's Arbitration Clause Is Substantively Unconscionable Because It Is Beneficial To Appellee And Detrimental To The Appellant....................................................................55

        d.    Sliding Scale Of Unconscionability.........................................57

VIII.   CONCLUSION………………………………………………….57

IX.    STATEMENT OF RELATED CASES…………………………….58

X.    CERTIFICATE OF COMPLIANCE……...………………………58

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abramson v. Juniper Networks, Inc.,*
115 Cal.App.4th 638, 663 (2004)............................................................8, 33

*Aetna Insurance Co. v. Kennedy*,
301 U.S. 389 (1937)……………………………………..…………….7, 25

*Allyn v. W. United Life Assurance Co*.,
347 F.Supp.2d 1246 (M.D. Fla. 2004)………………..…………………27

*Armendariz v. Found. Health Psychcare Servs., Inc*.,
24 Cal.4th 83 (2000).......................................................................47, 48, 55

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011)………………………………….......…………32, 53

*Aventa Learning, Inc. v. K12, Inc*.,
2011 WL 13100747 (W.D. Wash. 2011)………………….……………..…26

*Baker v. Osborne Develop. Corp*.,
159 Cal.App.4th 884 (2008).......................................................................36

*Bakrac, Inc. v. Villager Franchise Sys. Inc*.,
164 Fed. App'x 820 (11th Cir. 2006)………………………....………26

*Baltazar v. Forever 21, Inc.,*
62 Cal.4th 1237 (2016)...............................................................................38

*Barker v. Wingo,*
407 U.S. 514 (1972)…………………………………………...........…25

*BE & K Constr. Co. v. NLRB,*
122 S.Ct. 2390 (2002)…………………………………….……23, 24

*Bill Johnson's Restaurants, Inc. v. NLRB,*
103 S.Ct. 2161 (1983)…………………………………………....……23

# TABLE OF AUTHORITIES (continued)

**PAGE(S)**

**CASES**

*Borough of Duryea v. Guarnieri,*
131 S.Ct. 2488 (2011)……………………….……………………...………24

*Brown v. Board,*
2016 WL 4870541 (S.D. Ala. 2016)……………………...………………..27

*California Motor Transport v. Trucking Unlimited,*
92 S.Ct. 609 (1972)……………………………………......……..…………23

*Cannon v. Wells Fargo Bank N.A.,*
917 F.Supp.2d 1025 (N.D. Cal. 2013)………………….......………..……26

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC,*
816 F.3d 1208 (9th Cir. 2016)………………………………………….…..1

*Chavarria v. Ralphs Grocery Co.,*
733 F.3d 916 (9th Cir. 2013)........................................................................32

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
207 F.3d 1126 (9th Cir. 2000)......................................................................12

*Century 21 Real Estate LLC v. All Professional Realty, Inc.,*
2012 WL 2682761 (E.D. Cal. 2012)……………………......………..……26

*Circuit City Stores, Inc. v. Adams,*
279 F.3d 889 (9th Cir. 2002)........................................................................34

*Crouchman v. Sup.Ct. (El Dorado Investors),*
45 Cal.3d 1167 (1988)..................................................................................46

*Davies v. Grossmont Union High Sch. Dist.,*
930 F.2d 1390 (9th Cir.1991)………………….……………….......…………24

*Davis v. Nordstrom, Inc.,*
755 F.3d 1089 (9th Cir. 2014)................................................................12, 13

**TABLE OF AUTHORITIES** (continued)

**PAGE(S)**

**CASES**

*D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*,
    405 U.S. 178 (1972)……………………..……………….……………….24, 26

*Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*,
    81 S.Ct. 523 (1961)………………….....…...….…………………………23

*F.D.I.C v. Aaronian*,
    93 F.3d 636 (9th Cir. 1996)……………………….....…………………25

*Fitz v. NCR Corp.*,
    118 Cal.App. 4th 702 (2004)...................................40, 47, 49, 50, 52

*Fruge v. Amerisure Mut. Ins. Co.*,
    663 F.3d 743 (5th Cir. 2011)...................................................13, 32

*Fuentes v. Shevin*,
    407 U.S. 67 (1972)……………………………….....……….....………25

*Fundingsland v. Omh Healthedge Holdings, Inc.*,
    2016 WL 3022053 (S.D. Cal. 2016)…………………….............…….....……26

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*,
    232 Cal.App.4th 1332 *as modified on denial of reh'g* (Feb. 9, 2015)............34

*Hydramar, Inc. v. Gen. Dynamics Corp.*,
    1989 WL 159267 (E.D. Pa. 1989)………………………..……………27

*Impact Mech., Inc. v. Walsh Const. Co.*,
    2013 WL 4046387 (D. Mont. 2013)……………………………….....……..26

*Ingle v. Circuit City Stores, Inc.*
    328 F3d 1165 (9th Cir. 2003)...................................................36, 37

*Johnson v. Armored Transp. of Cal., Inc.*,
    813 F.2d 1041 (9th Cir. 1987)...............................................13, 32

## TABLE OF AUTHORITIES (continued)

**PAGE(S)**

**CASES**

*Johnson v. Zerbst,*
    304 U.S. 458 (1938)………………......………………………………….25

*King v. Larsen Realty, Inc.,*
    121 Cal.App.3d 349 (1981).....................................................14, 38

*Kinney v. United HealthCare Servs., Inc.,*
    70 Cal.App. 4th 1322 (1999)................................................48, 52

*Kona Enters., Inc. v. Estate of Bishop,*
    229 F.3d 877 (9th Cir. 2000).......................................................2

*Knutson v. Sirius XM Radio Inc.,*
    771 F.3d 559 (9th Cir. 2014)................................................13, 17

*Koffler Elec. Mechanical Apparatus Repair, Inc. v. Wartsila North America, Inc.,*
    2011 WL 1086035 (N.D. Cal. 2011)......................................20, 21

*Leasing Service Corp. v. Crane,*
    804 F.2d 828 (4th Cir. 1986)……………………......……...………….26

*Leonard v. Clark,*
    12 F.3d 885 (9th Cir. 1993)……………………................…………..6, 24

*Lim v. City of Long Beach,*
    217 F.3d 1050 (9th Cir. 2000)......................................................2

*Little v. Auto Stiegler, Inc.,*
    29 Cal.4th 1064 (2003)..............................................................40

*Lucas v. Hertz Corp.,*
    875 F. Supp. 2d 991 (N.D. Cal. 2012)...............................18, 19, 20

*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.,*
    89 Cal.App.4th 1042 (2001)................................................13, 14

# TABLE OF AUTHORITIES (continued)

**PAGE(S)**

## CASES

*MediVas, LLC v. Marubeni Corp.*,
    741 F.3d (9th Cir. 2014)…………………………………………….……..1

*Meridia Prods. Liab. Litig. v. Abbott Labs.*,
    447 F.3d 861 (6th Cir. 2006)……………………………………….13, 32

*Metters v. Ralphs Grocery Co.*,
    161 Cal.App.4th 696 (2008)……………………………………………14

*Meyer v. Portfolio Recovery Associates, LLC*,
    707 F.3d 1036 (9th Cir. 2012)……………………………………45, 51

*Morgan Guar. Trust Co. v. Crane*,
    36 F.Supp.2d 602 (S.D.N.Y. 1999)……………...………………………26

*Morrison v. Circuit City Stores, Inc.*,
    317 F.3d 646 (6th Cir. 2003)……………………………………….…26

*MZ Ventures LLC v. Mitsubishi Motor Sales of Am. Inc.*,
    1999 WL 33597219 (C.D. Cal. 1999)………………………………26

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) (en banc)……………………………37, 39

*National Ass'n for the Advancement of Multijurisdiction Practice v. Berch*,
    773 F.3d 1037 (9th Cir. 2014)………………………...……………………24

*O'Hanlon v. JPMorgan Chase Bank, N.A.*,
    2015 WL 5884844 (C.D. Cal. 2015)……………………………………53

*Parris v. Wyndham Vacation Resorts, Inc.*,
    2013 WL 1296231 (D. Haw. 2013)……………………...……………26

*Phoenix Leasing. v. Sure Broad.*,
    843 F.Supp. 1379 (D. Nev. 1994)………………………......………………26

# TABLE OF AUTHORITIES (continued)

PAGE(S)

## CASES

*Pinedo v. Premium Tobacco Stores, Inc.,*
  85 Cal.App.4th 774 (2000)..........................................................40

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC,*
  55 Cal.4th 223 (2012)..........................................................33

*P & O Nedlloyd, Ltd. v. Sanderson Farms, Inc.,*
  462 F.3d 1015 (8th Cir. 2006)...............................................13, 32

*Pokorny v. Quixtar, Inc.,*
  601 F.3d 987 (9th Cir. 2010)................................................39, 40

*Poublon v. C.H. Robinson Company,*
  846 F.3d 1251 (9th Cir. 2017).............................32, 33, 38, 48, 50, 53, 54, 55

*P.R. Hosp. Supply, Inc. v. Bos. Scientific Corp.,*
  426 F.3d 503 (1st Cir. 2005)................................................13, 32

*Reilly v. WM Fin.Servs., Inc.,*
  95 Fed. Appx. 851 (9th Cir. 2004).........................................18, 19

*Reyes v. United Healthcare Services, Inc.,*
  2014 WL 3926813 (C.D. Cal. 2014)............................................53

*Ridgeway v. Nabors Completion & Production Service Co.,*
  2015 WL 5971545 (C.D. Cal. 2015)............................................53

*Rosenberg v. Sup.Ct. (Cantu),*
  67 Cal.App. 4th 860 (1998).....................................................44

*Sanchez v. Carmax Auto Superstores California, LLC,*
  224 Cal.App.4th 398 (2014)....................................................50

*Sanchez v. Valencia Holding Co., LLC,*
  61 Cal.4th 899 (2015)......................................................32, 33, 35

# TABLE OF AUTHORITIES (continued)

**PAGE(S)**

**CASES**

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009)...................................................................45, 51

*Schell v. Witek,*
    218 F.3d 1017 (9th Cir. 2000)…………………......……..…….…………25

*Stirlen v. Supercuts, Inc.,*
    51 Cal.App.4th 1519 (1997)....................................................................36, 37

*Sullivan v. Ajax Navigation Corp.,*
    881 F.Supp. 906 (S.D.N.Y. 1995)…………………………………26, 31

*Szetela v. Discover Bank,*
    97 Cal.App.4th 1094 (2002).........................................................................34

*Tenneco W., Inc. v. Marathon Oil Co.,*
    756 F.2d 769 (9th Cir. 1985).......................................................................54

*Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.,*
    2013 WL 878754 (S.D. Cal. 2013)…………………………......……26, 31

*Walnut Producers of Calif. v. Diamond Foods, Inc.,*
    187 Cal.App.4th 634 (2010).......................................................................54

*Wolschlager v. Fid. Nat'l Title Ins. Co.,*
    111 Cal.App.4th 784 (2003)...................................................15, 16, 18, 19, 20

**CONSTITUTION**

U.S. Const. Am. I…………………………………………………..……………….2

**FEDERAL STATUTES**

28 U.S.C. section 1291..............................................................................1

# TABLE OF AUTHORITIES (continued)

**PAGE(S)**

**CASES**

28 U.S.C. section 1331………………………………...………………...………….1

28 U.S.C. section 1367………………………………………...………….....………….1

47 U.S.C. section 227(b)................................................................................1, 43, 44

**STATE STATUTES**

Cal. Code of Civil Procedure section 116.220(a)(5)....................................44

Cal. Code of Civil Procedure section 116.220(d)......................................43

Cal. Code of Civil Procedure section 116.221...........................................43

Cal. Code of Civil Procedure section 116.231............................................47

Cal. Code of Civil Procedure section 116.310(b)......................................44

Cal. Code of Civil Procedure section 116.530............................................45

Cal. Code of Civil Procedure section 116.710(a).......................................46

Cal. Code of Civil Procedure section 116.710(b)......................................46

Cal. Code of Civil Procedure section 1788.17...........................................43

Cal. Code of Civil Procedure section 1788.30............................................43, 45

**OTHER SOURCES**

Consumer Financial Protection Bur., Arbitration Study:
    Rep. to Congress Pursuant to the Dodd–Frank Act (Mar. 2015)...….29, 37, 56

# I. JURISDICTIONAL STATEMENT

## A. <u>Basis For The District Court's Jurisdiction</u>

The United States District Court for the Southern District of California had jurisdiction over this case under 28 U.S.C. section 1331 (general federal question), 47 U.S.C. section 227(b) (the Telephone Consumer Protection Act), and 28 U.S.C. section 1367 (for supplemental state claims).

## B. <u>Basis For The Court Of Appeals Jurisdiction</u>

This appeal is from an order of the United States District Court for the Southern District of California, granting Defendant-Appellee's motion to compel arbitration and dismissing Plaintiff-Appellant's underlying claims. An order compelling arbitration is appealable if the district court dismisses the underlying claims. *See MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 7 (9th Cir. 2014).

This appeal is also from an order denying Appellant's motion for partial reconsideration. Although a denial of a motion for reconsideration is generally not an appealable order, such an order is subject to review on appeal from the final judgment under 28 U.S.C. section 1291.

# II. STANDARD OF REVIEW

A district court's decision to grant a motion to compel arbitration is reviewed de novo. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016). A district court's decision to deny a motion for reconsideration

is reviewed for abuse of discretion. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). Questions of law are reviewed de novo. *See Lim v. City of Long Beach*, 217 F.3d 105Ni0, 1054 (9th Cir. 2000). Similarly, the de novo standard is used to determine whether the facts satisfy the legal rule. *Id.*

## III. ISSUES PRESENTED

1. Whether there is a valid agreement to arbitrate between Appellant and Appellee.

2. Whether Appellant knowingly, voluntarily and intelligently waived his First Amendment right under the Petition Clause of the First Amendment to prosecute his case in a judicial forum.

3. Whether the arbitration clause in this case was unconscionable.

## IV. PRIMARY AUTHORITY

### A. The United States Constitution

**Amendment I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

### B. The Federal Arbitration Act

**9 U.S. Code § 2 - Validity, irrevocability, and enforcement of agreements to arbitrate**

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

## 9 U.S. Code § 3 - Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

## 9 U.S. Code § 4 - Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no

agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

## V.   SUMMARY OF ARGUMENT

This appeal requires this Court to descend into the rabbit-hole and venture through the upside-down world of arbitration to resolve three separate and distinct issues.

After receiving numerous harassing telephone calls on his cellular telephone, despite revoking consent to be contacted on his cellular telephone, Appellant sued Appellee for violations of the Telephone Consumer Protection Act and the California Rosenthal Fair Debt Collection Practices Act.  Appellee filed a motion to compel arbitration.  The district court granted the motion and dismissed the case without prejudice.

The first issue is whether an agreement to arbitrate existed in this case.  The district court concluded that an agreement to arbitrate existed because the Credit Card Application Appellant signed, incorporated by reference the Customer Agreement and Disclosure Statement which included an arbitration clause.

However, the district court's conclusion is erroneous, because there could be no mutual assent since Appellant was unaware of the contractual provisions in the Customer Agreement and Disclosure Statement, which included the arbitration clause, at the time he signed the Credit Card Application.  This is so, because he was never given a copy of the Customer Agreement and Disclosure Statement, nor were the contents and terms of the agreement disclosed to him.

Moreover, contrary to the district court's conclusion, the Credit Card Application did not properly incorporate by reference the terms of the Customer Agreement and Disclosure Statement because (1) the reference was not clear and unequivocal, and (2) the terms in the Customer Agreement and Disclosure Statement were not known or easily available to Appellant at the time he signed the Credit Card Application. As such, the district court erred in concluding that an agreement to arbitrate existed in this case.

The second issue is a difficult and novel question of first impression[1]; that is, whether Appellant knowingly, voluntarily and intelligently waived his First Amendment right to prosecute this case in a judicial forum when he was forced into an adhesive arbitration agreement.

Appellant has a constitutional right under the Petition Clause of the First Amendment to file a lawsuit and prosecute his case in a judicial forum. This right is one of the most important constitutional rights that a person in this country has.

Although Appellant can waive his First Amendment right, such right may be "waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent." *Leonard v. Clark,* 12 F.3d 885, 889-890 (9th Cir. 1994). Additionally, because the First Amendment is a fundamental right, there is a strong

---

[1] This issue is currently on appeal after the Ninth Circuit granted plaintiff-appellant's interlocutory appeal in *Ziba Youssofi v. Credit One Fin'l*, Case Nos. 16-80166 and 17-55275.

presumption against a constitutional waiver. *See Aetna Insurance Co. v. Kennedy*, 301 U.S. 389, 393 (1937).

In granting Appellee's motion to compel arbitration, the district court rejected Appellant's waiver argument in four sentences, concluding that there was no First Amendment protection because there was no state action.

Appellant filed a motion for partial reconsideration, informing the district court that no state action is required because Appellant was not claiming a constitutional violation. In other words, Appellant argued that a state action is neither required nor a prerequisite in cases were the court is required to determine whether a person knowingly, voluntarily and intelligently waived his constitutional right. Appellant went one step further, arguing that even if a state action was required, one existed in this case.

The district court denied Appellant's motion for reconsideration. The district court did not address the state action argument, and instead ruled that Appellant had waived his First Amendment right.

The district court's ruling on Appellant's motion for reconsideration is legally incorrect. Not only did the district court fail to take into consideration the strong presumption against a constitutional waiver, but it also failed to apply the appropriate factors to determine whether Appellant knowingly, voluntarily, and intelligently waived his First Amendment right to litigate his case in a judicial forum.

In fact, if one applies the appropriate factors, one can easily conclude that Appellant did not knowingly, voluntarily, and intelligently waive his First Amendment right.

Accordingly, the district court erred in concluding that Appellant knowingly, voluntarily, and intelligently waived his First Amendment right to litigate his case in the judicial forum.

The third and final issue in this case is whether the arbitration agreement was unconscionable. The district court rejected Appellant's argument that the arbitration clause at issue was unconscionable. Although the district court found the arbitration clause to be procedurally unconscionable, it held that it was not substantively unconscionable. The district court's ruling is erroneous.

As discussed in detail below, the arbitration clause is procedurally unconscionable because there was both an element of oppression and surprise.[2]

The arbitration clause is substantively unconscionable because it is unreasonably favorable to Appellee, who is the more powerful party, since (1) it lacks mutuality, (2) limits Appellant's right to discovery, which would be fatal to his statutory claims under the TCPA and Rosenthal FDCPA, and (3) is unfairly beneficial to Appellee and detrimental to the Appellant.

Accordingly, for these three independent reasons, the judgment of the district

---

[2] It should be noted that only one of the two elements are required to show procedural unconscionability. *Abramson v. Juniper Networks, Inc.,* 115 Cal.App.4th 638, 663 (2004).

court, granting Appellee's motion to compel arbitration, should be reversed and the case remanded.

## VI. STATEMENT OF THE CASE

### A. <u>Underlying Facts</u>

On or about September 17, 2011, Plaintiff-Appellant Melad Youssofi ("Appellant") applied for a secured credit card with Defendant-Appellee Wells Fargo Bank, N.A. ("Appellee") in person at a branch with the assistance of Appellee's banker. ER 100. While at the branch, Appellant signed a document entitled "Credit Card Application and Agreement" ("Application"). ER 137. The Application stated in part the following:

> "You agree to be bound by the terms and conditions of the Customer Agreement and Disclosure Statement, which will be sent to you and understand that the terms of your account may be changed at any time, subject to applicable law. You hereby stipulate to the terms of the arbitration program described in the Customer Agreement and Disclosure Statement…."

ER 137.

During the entire application process, Appellant was not provided with the purported Customer Agreement and Disclosure Statement ("Agreement")[3] which

---

[3] In support of its motion to compel arbitration, Appellee produced five different Consumer Agreement & Disclosure Statements with arbitration clauses in the district court, which purportedly governed Appellant's account over the last five years. Appellant will only refer to the Consumer Agreement & Disclosure Statement which included the purported arbitration clause that was in place when he signed the Application in September 2011. This document is attached as Exhibit B to the Declaration of Angelique M. Holm. *See* ER 149-160.

contained the arbitration clause, nor were the terms of the Agreement (which included the arbitration clause) disclosed to Appellant. Appellant was also never informed by the banker, that all of his claims would be subject to arbitration and that he would waive his First Amendment right to go to court. In fact, Appellant had absolutely no knowledge that he would be prevented from bringing a claim against Appellee in court. ER 100.

Although sometime thereafter Appellant received his secured credit card, he never received the Agreement containing the arbitration clause.[4] ER 100.

## B.     Allegations In Appellant's Complaint

In his complaint, Appellant alleged that Appellee made numerous collection calls to Appellant's cellular telephone. Despite telling Appellee's representatives to stop calling his cellular telephone—and thereby revoking any purported consent for such calls—the collection calls continued. Appellant believed that Appellee, through their representatives, called him approximately 40 times. On at least one occasion, Appellee's representative did not even identify itself. ER 206-208.

Appellant alleged that these calls invaded his privacy, and caused him stress, annoyance, and anxiety, because most of the calls were made while Appellant was studying for his midterm exams and final exams. ER 208.

---

[4] Appellant denies ever receiving any of the other agreements included as Exhibits C through E to the Declaration of Angelique M. Holm. ER 100.

C.    **Procedural Background**

On June 2, 2016, Appellant filed a lawsuit against Appellee for violations of the Telephone Consumer Protection Act ("TCPA") and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal FDCPA").  ER 204-212.

On July 26, 2016, Appellee filed its motion to compel arbitration[5].  ER 104-120.  In support of its motion, Appellee included a declaration of its counsel, Genevieve R. Walser-Jolly, which included a copy of Appellant's complaint as an exhibit.  ER 121-132.  The motion was also supported by a declaration of Angelique M. Holm, which included several exhibits.  ER 133-203.

On August 15, 2016, Appellant filed his opposition to Appellee's motion to compel arbitration.  ER 65-95.  The motion was supported by a declaration of Alex Asil Mashiri, ER 96-98, as well as a declaration of Appellant.  ER 99-101.  On January 26, 2016, Appellee filed its reply brief to Appellant's opposition to compel arbitration.  ER 50-64.

On October 24, 2016, the district court granted Appellee's motion to compel arbitration and dismissed Appellant's case without prejudice.  ER 36-49. A civil

---

[5] Appellee also filed an answer to the complaint and Appellant filed a motion to strike the affirmative defenses asserted in Appellee's answer.  ER 214.  In order to keep the record as concise as possible, neither the answer nor the motion to strike the affirmative defenses are included in the Excerpt of Record because they are irrelevant to the issues in this case.  However, if the Court feels that these documents should have been included, Appellant respectfully request that the Court allow him to file a supplemental Excerpt of Record.

judgement was entered the same day.  ER 35.

On November 1, 2016, Appellant filed a partial motion for reconsideration on the constitutional waiver issue.  ER 21-30.  The motion for reconsideration was supported by a declaration of Alex Asil Mashiri.  ER 31-32.  On November 28, 2016, Appellee filed its opposition to Appellant's motion for partial reconsideration.  ER 15-20. Appellant filed his reply brief on December 1, 2017.  ER 6-12.

The district court denied Appellant's motion for partial reconsideration on December 21, 2017. ER 2-5.  Appellant filed his notice of appeal on January 13, 2017.  ER 1.

## VII.   ARGUMENT

### A.   The District Court's Order Compelling Appellant To Arbitration Should Be Reversed Because There Is No Valid Agreement To Arbitrate Between Appellant And Appellee

The district court erred in compelling arbitration in this case because there was no agreement to arbitrate.

To start, for a party to be compelled to arbitration, the court must determine (1) whether a valid agreement to arbitrate exists, and if so, (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000).  Absent a clear agreement, a contract to arbitrate will not be inferred.  *Davis v. Nordstrom, Inc*., 755 F.3d 1089, 1092 (9th Cir. 2014). The party (here Appellee) compelling arbitration "has the burden of proving the

existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014).

To determine whether a valid agreement to arbitrate exists, courts must apply ordinary state law principles that govern contract formation. *Davis,* 755 F.3d at p. 1092. In this case both Appellee and the district court applied California law. As such California law governs in this case[6].

### 1. There Was No Mutual Assent

Under California law, it is undisputed that mutual assent is a required element of contract formation. *Knutson,* 771 F.3d at p. 565. The general rule is that "one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc*., 89 Cal.App.4th 1042, 1049 (2001).

---

[6] To the extend Appellee contends that the Agreement, which includes the arbitration clause, had a choice-of-law provision making South Dakota the governing law, such argument has been waived in this appeal because it was not raised in the district court. *See Johnson v. Armored Transp. of Cal., Inc*., 813 F.2d 1041, 1044 (9th Cir. 1987) [holding that a choice-of-law question is waived unless it is timely raised]; *P.R. Hosp. Supply, Inc. v. Bos. Scientific Corp*., 426 F.3d 503, 505–506 (1st Cir. 2005) [holding that the choice-of-law argument was waived because it was not raised in the district court.]; *Fruge v. Amerisure Mut. Ins. Co*., 663 F.3d 743, 747 (5th Cir. 2011) ["Failure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis."]; *Meridia Prods. Liab. Litig. v. Abbott Labs*., 447 F.3d 861, 865 (6th Cir. 2006) ["where a party did not raise a choice-of-law argument in district court, it may not do so on appeal."]; *P & O Nedlloyd, Ltd. v. Sanderson Farms, Inc*., 462 F.3d 1015, 1017 fn. 3 (8th Cir. 2006) [declining to address choice-of-law question for the first time on appeal].

-13-

"But if the one who signs the instrument is unaware of the contractual provisions, he cannot be said to have agreed to them. Thus, '[a]n exception to [the] general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case, no contract is formed with respect to the undisclosed term. [Citations.]'" *Metters v. Ralphs Grocery Co*., 161 Cal.App.4th 696, 701 (2008) *quoting Marin Storage & Trucking, Inc.,* 89 Cal.App.4th at p. 1049.

During the entire application process and at the time Appellant signed the Application, Appellant was unaware of the contractual provisions in the Agreement because he was never given a copy of the Agreement, nor were the contents and terms of the Agreement disclosed to him. ER 100.

Moreover, the Application Appellant signed did not appear to be a contract. Although the Application mentioned the Agreement by name, neither the actual Agreement nor the terms and contents of the Agreements were disclosed and called to the attention of Appellant. In other words, Appellant had no way of knowing what he was agreeing to since the terms were not disclosed. How can there be mutual assent if Appellant does not know what he is agreeing to?

Finally, the general rule that a party is bound by a provision of an agreement he signs, even though he did not read them, does not apply to adhesion contracts, which is the case here. *See King v. Larsen Realty, Inc*., 121 Cal.App.3d 349, 358

-14-

(1981) ["As a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence. (Citation omitted) The sole exception to the rule is a contract of adhesion. A contract is classified as one of adhesion when it limits the duties or liabilities of the stronger party, and the weaker party experiences coercive pressure to sign."].

Accordingly, no agreement to arbitrate existed because there was no mutual assent.

### 2. There Was No Adequate Incorporation By Reference

The district court concluded, however, that a valid agreement to arbitration existed in this case because the Application Appellant signed, incorporated by reference the Agreement which included an arbitration clause. ER 40-42.

The district court conclusion is without merit since the Application did not properly incorporate by reference the terms of the Agreement, which includes the arbitration clause; ergo, no valid agreement to arbitrate existed.

Pursuant to California law, a contract may incorporate by reference provisions of another document which is not physically a part of the contract. *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal.App.4th 784, 790 (2003). However, for the terms of another document to be incorporated into the parties' executed contract, the following three elements must be satisfied: (1) the reference must be clear and unequivocal, (2) the reference must be called to the attention of the other party and

he must consent thereto, and (3) the terms of the incorporated document must be known or easily available to the contracting parties. *Id.*

Contrary to the district court's conclusion, the first and third elements of incorporation by reference are not met in this case. <u>First</u>, although the Application referenced the Agreement which contained the arbitration clause, the reference is not clear and unequivocal. A closer look at the Application shows that the mentioning of the Agreement in the Application was essentially hidden in a lengthy and wordy paragraph written in small font. The mentioning of the Agreement was buried in a paragraph which contained numerous additional information such as Appellee's authorization to run Appellant's credit, permission to investigate Appellants employment and income history as well as other information unrelated to the Agreement. ER 137.

As a practical matter, the Application should have either incorporated the Agreement in a separate paragraph which would have stood out to the Appellant or, at the very least, made use of a different font (e.g. bold font) to make Appellant aware of the fact that another document (here the Agreement) is being incorporated into the Application. This is especially appropriate here, since the incorporation of the Agreement included an arbitration clause that greatly impacted Appellant's rights – including but not limited to preventing him from litigating this case in a judicial forum.

Second, and most importantly, even assuming that the reference to the Agreement in the Application was clear and unequivocal, the terms in the Agreement were not known or easily available to Appellant at the time he signed the Application. Appellant did not know the terms of the Agreement which included the arbitration clause because Appellee never provided Appellant with a copy of the Agreement *at the time he signed the Application*. Nor did Appellee disclose the terms of the Agreement to him *at the time he signed the Application*. ER 100.

As to whether the arbitration clause was "easily available," Appellee failed to provide a single piece of evidence that it was. Instead of shifting the burden of proof to the Appellee as the district court should have done, the court placed the burden on Appellant. Specifically, the district court concluded that a valid incorporation by reference existed because (1) Appellant did not allege that the Agreement was not easily available to him and (2) Appellant had the ability to ask for the Agreement. ER 41.

But the district court erred in shifting the burden of proof to Appellant because such burden is on the Appellee since it is the Appellee who has to set forth evidence by a preponderance of the evidence, that a valid agreement to arbitrate existed. *See Knutson,* 771 F.3d at p. 565.

As such, it is the Appellee, not the Appellant, who was required to provide sufficient evidence that the Agreement was "easily available" to Appellant, which

Appellee failed to do in this case. Even if Appellant had the burden, he satisfied the burden in this case since the Application Appellant signed specifically states that the Agreement "will be sent." ER 137. This language clearly indicates that the Agreement was not "easily available" and was going to be provided at some date in the future.

Furthermore, if the Agreement was "easily available" why didn't the Application say so? For example, Appellee could have included some sort of language in the Application, informing Appellant that the Agreement will be sent but that it is also available upon request, but it did not do so. ER 137.

Moreover, the fact that Appellee could have obtained a copy of the Agreement which includes the arbitration clause at some time after he had signed the Application is irrelevant because the Agreement had to be easily available *at the time he signed the Application. Wolschlager,* 111 Cal.App.4th at p. 791.

Finally, the district court's reliance on *Wolschlager,* 111 Cal.App.4th 784, *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 999 (N.D. Cal. 2012) and *Reilly v. WM Fin.Servs., Inc.*, 95 Fed. Appx. 851, 852-53 (9th Cir. 2004) in support of its conclusion that the Agreement was properly incorporated by reference is misplaced.

This is because the decisions in *Wolschlager, Lucas*, and *Reilly* are fundamentally distinguishable in one important aspect. Unlike this case, the defendants (*e.g.* party compelling arbitration) in those three cases set forth evidence

that the incorporated document was "easily available" at the time they entered into the contract.

For example, in *Wolschlager,* the California Court of Appeal concluded that the arbitration clause in the title insurance policy was sufficiently incorporated by reference into the title report because it was easily available since the title report actually informed the party where he could inspect the incorporated document. *See Wolschlager,* 111 Cal.App.4th at p. 791 ["However, even if plaintiff did not know about the arbitration clause, the Policy with the clause was easily available to him. The preliminary report identified the Policy by name and directed the plaintiff to where he could inspect it."].

Similarly, in *Lucas*, the Northern District of California found sufficient incorporation by reference because defendant put forth evidence in the form of a declaration that it is defendant's standard policy and procedure that the incorporated agreement (folder jacket which included the arbitration clause) is provided at the time the rental contract is signed. *Lucas*, 875 F. Supp. 2d at p. 999 ["According to Mr. Calderon, it is standard policy and procedure for employees of the Costa Rican Hertz licensee to give the folder jacket to the customer at the time a vehicle is rented."].

Moreover, in *Reilly*, the Ninth Circuit found a sufficient incorporation by reference because the record on appeal before it showed that the arbitration

agreement was easily available. *Reilly*, 95 Fed. Appx. at p. 853.

Finally, other cases who have found that the incorporated document was "easily available" at the time the contract was signed, specifically contained language informing the parties that the incorporated document was available upon request. *See e.g. Koffler Elec. Mechanical Apparatus Repair, Inc. v. Wartsila North America, Inc.*, 2011 WL 1086035 (N.D. Cal. 2011) [the contract which incorporated a document containing an arbitration clause specifically stated that the incorporated document is available upon request.].

It is clear that the Appellee in this case failed to set forth any evidence that the Agreement was easily available. <u>First</u>, unlike *Wolschlager*, there was absolutely no language in the Application informing Appellant where he could inspect the Agreement containing the arbitration clause. In fact, as indicated above, the Application itself stated that the Agreement "will be sent" to Appellant, which clearly supports the fact that it was not available *at the time Appellant signed the Application.* ER 137.

<u>Second</u>, unlike the defendant in *Lucas*, Appellee failed to provide a declaration attesting that it is standard policy and procedure for Appellee's employees to provide the Agreement, which includes the arbitration clause, at the time the Application is signed. In fact, Appellee provided no evidence at all. ER 133-135.

<u>Finally</u>, unlike *Koffler Elec. Mechanical Apparatus Repair, Inc.*, the Application Appellant signed did not contain any language that the Agreement was available upon request. ER 137-148.

Because there was no proper incorporation by reference, the district court erred in concluding that a valid agreement to arbitrate existed. Accordingly, the judgment compelling arbitration should be reversed for this reason alone.

**B.** **The District Court's Order Compelling Appellant To Arbitration Should Be Reversed Because Appellant Did Not Knowingly, Voluntarily And Intelligently Waive His First Amendment Right Under The Petition Clause To Prosecute This Case In a Judicial Forum**

Assuming there was a proper agreement to arbitrate, Appellant cannot be compelled to arbitration because he did not knowingly, voluntarily, and intelligently waive his First Amendment right under the Petition Clause to prosecute his case in a judicial forum.[7]

Appellant made this argument in his opposition to Appellee's motion to compel arbitration. ER 78-80. The district court rejected Appellant's argument in four sentences, concluding that there was no First Amendment protection because there was no state action. ER 39-40.

Appellant filed a motion for partial reconsideration, informing the district court that no state action is required because Appellant was not alleging a

---

[7] As indicated in the Summary of Argument section, this issue is currently pending in front of the Ninth Circuit in *Ziba Youssofi v. Credit One Bank*, Case No. 17-55275.

-21-

constitutional violation.  ER 24-27, ER 7-10.  In other words, Appellant argued that a state action is neither required nor a prerequisite in cases were the court is required to determine whether a person knowingly, voluntary and intelligently waived his constitutional right.  *Id.*  Appellant went one step further, arguing that even if a state action was required, one existed in this case.  ER 27-29; ER 10-12.

The district court denied Appellant's motion for reconsideration.  In doing so, the district court did not address the state action argument, rather it concluded that Appellant waived his First Amendment right to prosecute his case in a judicial forum.  ER 2-5.

However, the district court's ruling was erroneous.  As discussed in detail below, Appellant has a constitutional right under the First Amendment to litigate his case in a judicial forum and because this is a fundamental right, it can only be waived, if the waiver is knowingly, voluntarily, and intelligently.

In order to determine whether a waiver was knowing, voluntary, and intelligent, the district court was required not only to take into consideration the strong presumption against a constitutional waiver, but it was also required to apply the appropriate factors to assure that a valid constitutional waiver existed.  The district court failed to do so here.  ER 3-5.

In fact, as discussed below, if one applies the appropriate factors, one can easily conclude that Appellant did not knowingly, voluntarily, and intelligently

waive his First Amendment right.

1. **Appellant Has A Constitutional Right Under The Petition Clause Of The First Amendment To Prosecute His Case In A Judicial Forum**

The United States Supreme Court repeatedly stated that the First Amendment, which includes the Petition Clause, is one of the most important constitutional rights in this country. *See e.g. California Motor Transport v. Trucking Unlimited*, 92 S.Ct. 609, 611 (1972) ["The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms."] quoting *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*, 81 S.Ct. 523, 530 (1961); *BE & K Constr. Co. v. NLRB,* 122 S.Ct. 2390, 2396 (2002) ["We have recognized this right to petition as one of "the most precious of the liberties safeguarded by the Bill of Rights."].

The Petition Clause states in part: "Congress shall make no law...abridging...the right of the people...to petition the Government for a redress of grievances." *BE & K Constr. Co.*, 122 S.Ct. at p. 2395-2396; U.S. Const. Am. I.

The right to "petition the government for redress of grievances" includes the right of access to the public courts. *Bill Johnson's Restaurants, Inc. v. NLRB,* 103 S.Ct. 2161, 2169 (1983); *California Motor Transport,* 92 S.Ct. at p. 612.

In other words, the "Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal

disputes." *Borough of Duryea v. Guarnieri,* 131 S.Ct. 2488, 2494 (2011); *National Ass'n for the Advancement of Multijurisdiction Practice v. Berch,* 773 F.3d 1037, 1048 (9th Cir. 2014). Simply put, a person has a constitutional right to file a lawsuit and prosecute her case in a judicial forum.[8] *Id*.

### 2. Appellant Did Not Knowingly, Voluntarily And Intelligently Waive His First Amendment Right Under The Petition Clause To Prosecute This Case In A Judicial Forum

#### a. *A Person Can Only Waive His First Amendment Right If The Waiver Was Knowing, Voluntary, and Intelligent*

Like with most constitutional rights, a person may contractually waive his rights under the First Amendment. *Leonard,* 12 F.3d at p. 889-90. However, constitutional rights, including rights under the First Amendment, can only be waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent. *D. H. Overmyer Co. Inc., of Ohio v. Frick Co*., 405 U.S. 178, 185 (1972); *Davies v. Grossmont Union High Sch. Dist*., 930 F.2d 1390, 1394-1395 (9th Cir.1991) cert. denied, (1991) 501 U.S. 1252 [waiver of a constitutional right must be knowingly, voluntarily, and intelligently and demonstrated by clear and convincing evidence]; *Leonard,* 12 F.3d at p. 889-90 ["First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent."].

---

[8] Appellant acknowledges that the First Amendment may not protect frivolous or baseless lawsuits. *See BE & K Constr. Co.,* 122 S.Ct. at p. 2399.

Additionally, because the First Amendment is a fundamental right, courts must closely scrutinize a waiver of the First Amendment and "indulge every reasonable presumption against a waiver." *Aetna Insurance Co.,* 301 U.S. at p. 393 [courts indulge every reasonable presumption against waiver of a fundamental right]; *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) [same]; *Fuentes v. Shevin*, 407 U.S. 67, 94 fn. 31 (1972) [same]; *Barker v. Wingo*, 407 U.S. 514, 525 (1972) ["presuming waiver of a fundamental right from inaction….is inconsistent with this Court's pronouncements on waiver of constitutional rights."]; *F.D.I.C v. Aaronian*, 93 F.3d 636, 640 (9th Cir. 1996) [stating that "the right to be heard in court is central to our system of justice, and, as with other constitutional rights, there is no presumption of waiver."]; *Schell v. Witek,* 218 F.3d 1017, 1023 (9th Cir. 2000).

These well-established constitutional principles clearly provide that rights under the First Amendment can only be waived if the waiver is made knowingly, voluntarily, and intelligently.

### b. *Courts Generally Use Five Factors To Determine Whether A Waiver Of A Constitutional Right Was Knowing, Voluntary, And Intelligent*

To determine whether a party contractually waived his constitutional right knowingly, voluntarily, and intelligently, the U.S. Supreme Court has applied the following three factors: (1) whether the contract is one of adhesion; (2) whether there is a great disparity in bargaining power between the parties; and (3) whether there is

consideration for the waiver.  *D.H. Overmyer Co.,* 405 U.S. at p. 188.

At least three circuit courts, as well as district courts within and outside the Ninth Circuit have applied the following two additional factors to determine whether a constitutional waiver was made knowingly, voluntarily, and intelligently:  (1) the sophistication of the parties; and (2) whether the waiver was inconspicuous.  *See Leasing Service Corp. v. Crane,* 804 F.2d 828, 832–833 (4th Cir. 1986); *Bakrac, Inc. v. Villager Franchise Sys. Inc*., 164 Fed. App'x 820, 824 (11th Cir. 2006); *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 668 (6th Cir. 2003); *Phoenix Leasing. v. Sure Broad*., 843 F.Supp. 1379, 1384 (D. Nev. 1994) *aff'd without published opinion*, 89 F.3d 846 (9th Cir. 1996); *Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.,* 2013 WL 878754 at *2 (S.D. Cal. 2013); *Fundingsland v. Omh Healthedge Holdings, Inc.*, 2016 WL 3022053 at *9 (S.D. Cal. 2016); *Cannon v. Wells Fargo Bank N.A*., 917 F.Supp.2d 1025, 1058 (N.D. Cal. 2013); *Century 21 Real Estate LLC v. All Professional Realty, Inc*., 2012 WL 2682761 at *3 (E.D. Cal. 2012); *MZ Ventures LLC v. Mitsubishi Motor Sales of Am. Inc*., 1999 WL 33597219, at *15 (C.D. Cal. 1999); *Impact Mech., Inc. v. Walsh Const. Co.*, 2013 WL 4046387 at *2 (D. Mont. 2013); *Parris v. Wyndham Vacation Resorts, Inc*., 2013 WL 1296231 (D. Haw. 2013); *Aventa Learning, Inc. v. K12, Inc*., 2011 WL 13100747 *2 (W.D. Wash. 2011); *Morgan Guar. Trust Co. v. Crane*, 36 F.Supp.2d 602, 604 (S.D.N.Y. 1999); *Sullivan v. Ajax Navigation Corp.,* 881 F.Supp. 906, 911

(S.D.N.Y. 1995); *Brown v. Board*, 2016 WL 4870541 at \*2 (S.D. Ala. 2016); *Allyn v. W. United Life Assurance Co*., 347 F.Supp.2d 1246, 1252 (M.D. Fla. 2004); *Hydramar, Inc. v. Gen. Dynamics Corp*., 1989 WL 159267 at \*3 (E.D. Pa. 1989).

In sum, courts generally apply five factors to determine whether a waiver of a constitutional right was made knowingly, voluntarily, and intelligently: (1) whether the contract is one of adhesion; (2) whether there is a great disparity in bargaining power between the parties; (3) whether there is consideration; (4) the sophistication of the parties; and (5) whether the waiver was inconspicuous. *Id*.

### c. Applying the Five-Factor Test In This Case Supports Petitioner's Position That He Did Not Knowingly, Voluntarily, And Intelligently Waive His First Amendment Right

Applying the above mentioned five-factor test in this case and keeping in mind that there is a strong presumption against a First Amendment waiver, Appellant cannot be compelled to arbitration because Appellee has failed to demonstrate by clear and convincing evidence that Appellant knowingly, voluntarily, and intelligently waived his First Amendment constitutional right under the Petition Clause to prosecute this case in a judicial forum.

### 1. The Arbitration Agreement Is One Of Adhesion

The arbitration clause in the Agreement is clearly one of adhesion, in which Appellant had absolutely no ability to change the terms. Moreover, it is a

standardized form and was given to Appellant on a "take it or leave it" basis, without giving Appellant the opportunity to change its terms. ER 150-160. Thus, this factor weighs in favor of Appellant.

### 2. There Was Great Disparity In Bargaining Power

To start with, Appellant was never informed, during the entire application process, that he would be forced to arbitrate his claims. Nor was he provided with a copy of the Agreement which included the arbitration clause. In fact, Appellant never received a copy of the Agreement from the Appellee. ER 100.

But, even assuming Appellant received a copy of the Agreement which included the arbitration clause, the Agreement in this case was solely prepared by Appellee, and Appellant had absolutely no bargaining power to negotiate its terms. Appellant never gave Appellee the opportunity to seek the assistance of counsel before forcing him into arbitration. Nor was Appellant given the opportunity to seek counsel to bargain any of the terms of the Agreement which contained the arbitration clause. ER 100, 150-160.

Finally, and most importantly, Appellant was not even given the choice to reject or opt-out of the arbitration. ER 150-160. The arbitration clause in the Agreement was simply forced upon Appellant without his ability to reject it. Clearly, this factor weighs in favor of Appellant.

### 3. There Was No Consideration

There is absolutely no evidence that Appellant received any consideration for giving up his First Amendment constitutional right to prosecute this case in a judicial forum. Thus, this factor weighs in favor of Appellant.

### 4. Appellant's Level Of Sophistication Is Considerably Less Than Appellees

The Agreement in this case is between a national bank and a consumer, who has a substantially lower level of sophistication. Ignoring the fact that Appellant was never informed, during the entire application process, that he would be forced to arbitrate all of his claims, nor provided with a copy of the Agreement which included arbitration clause, Appellant had no idea what arbitration was. ER 100.

In other words, Appellant had absolutely no knowledge that arbitration would prevent him from going to court and force him to give up his First Amendment right to prosecute this case in a judicial forum. ER 100.

The troubling part is the fact that Appellant is not alone. Consumers, like the Appellant in this case, are constantly compelled to arbitration even though they have a First Amendment right to prosecute their case in a judicial forum. What makes matters worse is the fact that they rarely know they are being stripped of their First Amendment right. According to the Consumer Financial Protection Bureau ("CFPB"), less than 7 percent of credit card consumers subject to pre-dispute arbitration clauses know that they could not bring a claim in court. *See* Consumer

Financial Protection Bur., Arbitration Study: Rep. to Congress Pursuant to the Dodd–Frank Act (Mar. 2015) § 3.1, p. 4.

Stated differently, approximately 93% of people who are forced into adhesion arbitration agreements, do not know that they are being stripped of their First Amendment right to prosecute their case in a judicial forum. *Id.*

In short, like the majority of consumer, Appellant had absolutely no knowledge that arbitration would prevent him from prosecuting his case in a judicial forum. The question remains; how can anyone knowingly, voluntarily, and intelligently waive their First Amendment constitutional right under the Petition Clause when they do not know what they are waiving? Clearly, this factor weighs in favor of Appellant.

## 5. The Waiver In The Arbitration Agreement Is Inconspicuous

Assuming Appellant was provided with the Agreement (which Appellant disputes), the waiver in the Agreement is inconspicuous. Although page 8 of the Agreement says that Appellant waives his right to a jury trial or trial before a judge in public court, it did not specifically say that Appellant waived his First Amendment right under the Petition Clause. Nor did it inform Appellant of the consequences in waiving such a fundamental right. ER 157.

Moreover, assuming Appellant was provided with the Agreement, the Agreement was not provided until after he filled out his loan application and until

after Appellee ran his credit, which negatively affected his credit score. ER 206. How can someone agree to certain terms if they have not seen those terms?

Even if the last factor somewhat supports Appellee's position, this factor alone does not render the waiver of Appellant's First Amendment rights knowing, voluntary, and intelligent. *See e.g. Travelers*, 2013 WL 878754 at *3 fn. 5 [holding that the inconspicuous factor alone is insufficient to constitute a knowingly, voluntarily, and intelligently waiver, especially when the other factors clearly weigh against enforceability of the waiver]. Especially in this case, where there is a strong presumption against waiver and the remaining four factors clearly weigh against enforceability. *Id*. *citing to Sullivan,* 881 F.Supp. 906, 911 [holding that a party "cannot overcome the presumption against a waiver" simply "by referring to the placement and font size of the waiver clause."].

Because Appellant did not knowingly, voluntarily, and intelligently waive his First Amendment right under the Petition Clause to prosecute his claims in a judicial forum, he cannot be compelled to arbitration.

Accordingly, the judgement compelling arbitration should be reversed for this reason as well.

## C. The District Court's Order Compelling Appellant To Arbitration Should Be Reversed Because The Arbitration Agreement Between Appellant And Appellee Was Unconscionable

Assuming there was a valid agreement to arbitrate and Appellant knowingly,

voluntarily, and intelligently waived his First Amendment right to prosecute this case in a judicial forum, the arbitration clause in the Agreement cannot be enforced against Appellant because it is unconscionable.

It is well established that an agreement to arbitrate can be invalidated if the agreement is unconscionable. *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 921 (9th Cir. 2013); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) [holding that agreements to arbitrate may be invalidated by generally applicable contract defenses such as unconscionability.].

In order to prove an unconscionability defense under California law[9], the party opposing arbitration has the burden of proof to show that the arbitration clause is both procedurally and substantively unconscionable. *Poublon v. C.H. Robinson Company*, 846 F.3d 1251, 1260 (9th Cir. 2017) citing to *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015).

"Procedural and substantive unconscionability 'need not be present in the same degree.' (Citation Omitted) Rather, there is a sliding scale: 'the more

---

[9] Both Appellee as well as the district court applied California law when discussing unconscionability. ER 42-45; ER 59-64. As indicated above, to the extend Appellee contends that the choice of law provision in the Agreement makes South Dakota the governing law, such contention lacks merit because Appellee waived its right to enforce the choice of law clause since it never raised the issue in the district court. *See Johnson,* 813 F.2d at p. 1044; *P.R. Hosp. Supply, Inc.,* 426 F.3d at p. 505-506; *Fruge,* 663 F.3d at p. 747; *Meridia Prods. Liab. Litig.,* 447 F.3d at p. 865; *P & O Nedlloyd, Ltd.,* 462 F.3d at p. 1017 fn. 3.

substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Poublon,* 846 F.3d at p. 1260 quoting *Sanchez,* 61 Cal.4th at p. 910.

As discussed below, Appellee's arbitration clause in this case is both procedurally and substantively unconscionable. ER 157.

### 1.    Appellee's Arbitration Clause Is Procedurally Unconscionable

The procedural element of unconscionability focuses on "'oppression or surprise due to unequal bargaining power.'" *Poublon,* 846 F.3d at p. 1260 quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal.4th 223, 246 (2012). To show procedural unconscionability, the contract at issue must either involve "oppression" or "surprise." *Id.* A party need not show both. *Abramson,* 115 Cal.App.4th at p. 663. Stated differently, if an arbitration clause is found to be "oppressive" the lack of "surprise" and awareness of the terms does not preclude a finding of procedural unconscionability. *Abramson,* 115 Cal.App.4th at p. 663.

As indicated below, the arbitration clause in this case has both an element of oppression and surprise, and is therefore procedurally unconscionable.

### a.    The Arbitration Clause Involves An Element Of Oppression

Oppression occurs when there is an "'inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.'" *Poublon*, 846

F.3d at p. 1260 *quoting Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal.App.4th 1332, 1347-1348 *as modified on denial of reh'g* (Feb. 9, 2015). In other words, oppression occurs when a contract is presented on a "take it or leave it" basis without the opportunity for meaningful negotiation. *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 1100 (2002).

For example, a contract of adhesion—which is a standard-form agreement drafted by the party with superior bargaining power and presented on a take it or leave it basis—is "oppressive" and therefore procedurally unconscionable. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002); *Sanchez,* 61 Cal.4th at p. 915 ["the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability."].

Similarly, oppression may be established "by showing from the "'totality of the circumstances surrounding the negotiation and formation of the contract'" that it was oppressive. *Poublon*, 846 F.3d at p. 1260 *quoting Grand Prospect Partners, L.P,* 232 Cal.App.4th at p. 1348.

The arbitration clause in this case is "oppressive" and therefore procedurally unconscionable for at least two reasons. First, the arbitration clause in this case is a contract of adhesion because it is a standardized form drafted by Appellee, who is the party with superior bargaining power, and was given to Appellant on a take it or leave it basis. Notably, Appellant was never given the opportunity and right to

-34-

negotiate or change any of its terms nor was he in any position to modify, change, or supplement its terms.  ER 150-160.

To the extent Appellee takes the position that Appellant failed to show that he was deprived of the opportunity to negotiate the terms of the Agreement, no such showing is required.  *Sanchez,* 61 Cal.4th at p. 914  ["in the context of consumer contracts, we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions."].

Second, assuming, for the sake of argument, that Appellant received the Agreement, which included the arbitration clause (which he emphatically denies), Appellant was not even given the opportunity to reject or opt out of arbitration. Instead, the arbitration clause was forced upon Appellant, unilaterally stripping him of his constitutional right under the Petition Clause of the First Amendment to prosecute this case in a judicial forum.  ER 150-160.

Accordingly, for these two independent reasons, the element of oppression is present, making the arbitration clause procedurally unconscionable.

### b.   The Arbitration Clause Involves An Element Of Surprise

In addition to "oppression," the arbitration clause in this case also has an element of "surprise."   The element of "surprise" occurs when "'the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the

party seeking to enforce the disputed terms.'" *Ingle v. Circuit City Stores, Inc.* 328 F3d 1165, 1171-1172 (9th Cir. 2003) quoting *Stirlen v. Supercuts, Inc*., 51 Cal.App.4th 1519, 1532 (1997).

For example, "surprise" is established when the terms of the arbitration clause were not disclosed at the time a contract is signed, but instead is in a document incorporated by reference which was unavailable at the time of the execution of the contract. *See e.g. Baker v. Osborne Develop. Corp*., 159 Cal.App.4th 884, 894-896 (2008).

The element of "surprise" is present here for three reasons. <u>First</u>, Appellant never signed the Agreement containing the arbitration clause. Nor was the Agreement containing the arbitration clause ever provided or given to him either *at the time he signed* the Application or at any time thereafter. ER 100.

Moreover, Appellee failed to provide a single piece of evidence that the terms of the arbitration clause governing Appellant's account were available *at the time Appellant signed* the Application. To the contrary, the fact of the matter is that Appellant signed an Application that referred to an Agreement which contained an arbitration clause; the actual terms of which were never disclosed to him. In fact, Appellant never received the Agreement containing the arbitration clause and did not see its terms until Appellee actually filed its motion to compel arbitration in the district court. ER 100.

<u>Second</u>, even assuming Appellant received the Agreement containing the arbitration clause (which again Appellant disputes), the arbitration clause itself was not properly disclosed because it was located on the bottom of page 8 of the Agreement, after seven pages of dense information. The arbitration clause, which was drafted solely by Appellee and given to Appellant on a take it or leave it basis, was essentially buried in Appellee's lengthy and wordy Agreement. ER 150-157.

Indeed, and as briefly indicated above, arbitration clauses hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms, satisfies the element of "surprise" and further supports procedural unconscionability. *Ingle,* 328 F.3d at p. 1171-1172 quoting *Stirlen,* 51 Cal.App.4th at p. 1532; *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc).

<u>Finally</u>, the element of "surprise" is present here because Appellant did not know, at the time he signed the Application, that he was waiving his First Amendment right to prosecute this case in a judicial forum and that Arbitration would prevent him from bringing any claims against Appellee in court. ER 100.

As pointed out above, Appellant is not alone; less than 7 percent of credit card consumers subject to pre-dispute arbitration clauses understand that they cannot bring a claim in court. *See* Consumer Financial Protection Bur., Arbitration Study: Rep. to Congress Pursuant to the Dodd–Frank Act (Mar. 2015) § 3.1, p. 4.

To the extend Appellee contends that Appellant is bound by a provision of an

agreement he signs, even though he does not read it, this contention should be rejected because this general rule does not apply to contracts of adhesion, which is the case here. *King,* 121 Cal.App.3d at p. 358.

For these reasons, Appellee's arbitration clause involves both "oppression" and "surprise" and would therefore amount to a high degree of procedurally unconscionability.

## 2. Appellee's Arbitration Clause Is Substantively Unconscionable

In addition to being procedurally unconscionable, Appellee's arbitration clause is also substantively unconscionable. ER 157.

As the Ninth Circuit pointed out in *Poublon*, "California courts have articulated numerous standards for determining substantive unconscionability." *Poublon*, 846 F.3d at p. 1261. For example, in order to be substantively unconscionable, the agreement must either be "overly harsh," "unduly oppressive," "unreasonably favorable," or must "shock the conscience." *Poublon*, 846 F.3d at p. 1261 citing to *Sanchez*, 61 Cal.4th at 911.

Although there are numerous standards, these "'formulations, used throughout [California] case law, all mean the same thing.'" *Poublon*, 846 F.3d at p. 1261. "The 'central idea' is that 'the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party.'" *Id. quoting Baltazar v. Forever 21, Inc.,* 62

Cal.4th 1237, 1244 (2016).

Here, Appellee's arbitration clause in the Agreement is substantively unconscionable because it is unreasonably favorable to Appellee, who is the more powerful party, since (1) it lacks mutuality, (2) limits Appellant's right to discovery, which would be fatal to his statutory claims under the TCPA and Rosenthal FDCPA, and (3) is unfairly beneficial to Appellee and detrimental to the Appellant.

### a. Appellee's Arbitration Clause Lacks Mutuality

Keeping in mind that the Agreement which includes the arbitration clause was drafted solely by the Appellee, who is the party with superior bargaining power, and given to Appellant on a take it or leave it basis, the arbitration clause lacks mutuality and is completely one-sided.

To start with, the lack of mutuality renders an arbitration clause substantively unconscionable. *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 1001 (9th Cir. 2010); *Nagrampa,* 469 F.3d at pp. 1285-1286.

In California, it is well established that an arbitration clause lacks mutuality and is substantively unconscionable when it requires the weaker party (*i.e.,* Appellant) to arbitrate all of his claims, while the party with stronger bargaining power (*i.e.,* Appellee) is permitted to litigate all of its claims in a judicial forum. *See Nagrampa,* 469 F.3d at p. 1285 ["where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability

to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability."]; *Pokorny,* 601 F.3d at p. 1001 ["Requiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive unconscionability under California law."]; *Little v. Auto Stiegler, Inc.* 29 Cal.4th 1064, 1071-1072 (2003) [substantive unconscionability exists when "the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration."]; *Pinedo v. Premium Tobacco Stores, Inc.,* 85 Cal.App.4th 774, 779-780 (2000) ["it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee."]; *Fitz v. NCR Corp.*, 118 Cal.App. 4th 702, 724 (2004) ["An agreement may be unfairly one-sided if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party."].

Here, all of Appellant's claims against Appellee are subject to arbitration, while all of Appellee's claims against Appellant are not. In other words, Appellant must arbitrate all of his claims against Appellee, but Appellee is permitted to litigate all of its claims against Appellant in a judicial forum. Appellee's arbitration clause states, in part, the following:

    **a.**  **Binding Arbitration**. You and [Appellee] agree that if a Dispute arises between you and the [Appellee], upon Demand by either you or the

[Appellee], the Dispute shall be resolved by the following arbitration process. The forgoing notwithstanding, the Bank [Appellee] *shall not initiate an arbitration to collect a consumer debt*, but reserves the right to arbitrate all other disputes with its consumer customers……….

**c. Rights Preserved.** This Arbitration Agreement *does not prohibit* the Parties from exercising any lawful rights or using other available remedies to preserve, foreclose, or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment or the appointment of a receiver by court of competent jurisdiction.

ER 157.

In summarizing Appellee's arbitration clause, it clearly shows that it has the right to use the judicial forum for (1) collection lawsuits, (2) foreclosure proceedings, (3) repossession actions, or (4) any action involving the enforcement of a judgment. ER 157.

Clearly, depending on what the debt was for, practically speaking, those are the only claims Appellee would have against a consumer. For example, because this case involves a credit card debt, the only claim Appellee would, and could, bring against Appellant is a collection lawsuit, which is not subject to arbitration.

In fact, Appellee uses the judicial forum to file hundreds, if not thousands, of collection lawsuits against consumers in the County of San Diego, alone, each year. By way of estimation, a simple online search of the San Diego County Superior Court Register of Actions shows that Appellee has filed in excess of approximately

300 collection lawsuits this year alone.[10]

Indeed, the arbitration clause is unfair and substantively unconscionable because all of Appellant's claims are subject to an arbitration forum, while all of the claims Appellee would bring against Appellant (*i.e.*, collection lawsuit) are *not* subject to an arbitration forum. In other words, Appellee is free from using a judicial forum to file collection lawsuits, while Appellant is forced to arbitrate all of his claims. No reasonable person would find this to be fair.

Notably, the district court neither disagreed nor challenged Appellant's position that Appellee is free from using a judicial forum to prosecute all of its claims against Appellant. Instead, the district court stated that no lack of mutuality exists because Appellant was free to prosecute his case in small claims court. ER 45.

The district court's reasoning is troubling, and the fact that Appellee is free to use *any* judicial forum (*e.g.,* superior court), while Appellant's only judicial forum is small claims court, which is of very limited jurisdiction and subject to severe restrictions, is clearly unfair, not well-contemplated, and unreasonably favorable to Appellee (who is the more powerful party) for at least six reasons.

First, had Appellant brought this case in small claims court, he would not have been able to recover all of the damages requested in his complaint because the recovery of damages in small claims court are limited to $10,000.00. *See Cal. Code*

---

[10] The link can be found at: http://courtindex.sdcourt.ca.gov/CISPublic/enter

*of Civ. Proc* § 116.221.

Pursuant to the TCPA, a plaintiff is entitled to $500.00 per call for negligent violations and $1,500.00 per call for intentional violations. 47 U.S.C. § 227(b)(3)(B)-(C). In this case, Appellant alleges that he received approximately 40 calls, which could amount to either $20,000.00 or $60,000.00 in damages, depending on whether the calls were negligent or intentional. ER 208. These amounts of damages do not even include Appellant's claim under the Rosenthal FDCPA which also has a statutory and actual damage recovery provision, plus attorney's fee provision. *See Cal. Civ. Code* §§ 1788.30(a)-(c), 1788.17.

In any event, Appellant's would not be able to recover the amount of damages requested in his complaint because the recovery in small claims court is limited to $10,000.00 and Appellant would have to waive the remainder of the amount of damages (either $10,000 or $50,000) in order to have jurisdiction in small claims court. *See Cal. Code of Civ. Proc* § 116.220(d) [if a demand exceeds the $10,000.00 limit, a plaintiff must waive the excess demand for damages otherwise there is lack of jurisdiction in small claims court.]. Clearly, this limit on damages is completely one sided and would tremendously inure to the benefit of Appellee because it allows Appellee to escape liability of anything that is in excess of $10,000.00.

Second, aside from requesting monetary damages under the TCPA, Appellant's complaint was also requesting injunctive relief. ER 209-210, 212. A

small claims court, however, cannot issue any injunctive relief unless the applicable statute (here the TCPA) *expressly authorizes a small claims court* to grant such relief. *See Cal. Code of Civ. Proc.* § 116.220(a)(5).

To elucidate, it should be known that although 47 U.S.C. section 227(b)(3) of the TCPA allows state courts to issue injunctive relief, it does not *expressly allow* a small claims court to issue injunctive relief. Accordingly, Appellant would not be able to seek injunctive relief in small claims court; something he had requested in his complaint. The inability for Appellant to obtain an injunction undoubtedly benefits the Appellee.

<u>Third</u>, Appellant would have absolutely no right to discovery (*e.g.* written discovery or depositions) in small claims court. *See Cal. Code of Civ. Proc.* § 116.310(b); *Rosenberg v. Sup.Ct. (Cantu)*, 67 Cal.App. 4th 860, 865 (1998). Because of this, Appellant would not be able to propound written discovery or take any necessary depositions. *Id*. These discovery procedures are of significant importance in the search for truth, and particularly in cases including a violation of the TCPA—which is known to be a complex consumer statute that requires fact intensive discovery when attempting to establish a viable claim thereunder.

Moreover, Appellant has the burden in small claims court to prove his case. The inability to obtain discovery in a TCPA case is fatal to his claim because most of the evidence is in Appellee's possession. By way of example, in order to prevail

under the TCPA, a consumer must show, among other things, that the defendant who made the calls used an automatic telephone dialing system ("ATDS"). *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Whether or not an ATDS was used is always a hotly contested issue. *See e.g. Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 950-951 (9th Cir. 2009); *Meyer,* 707 F.3d at p. 1043.

This begs the question: How can a plaintiff subjected to absolutely no discovery, make a showing that Appellee used an ATDS? In fact, proving that an ATDS was used is a complex task, which requires discovery and, at times, expert testimony/opinion. Clearly, Appellant's inability to obtain the necessary discovery to prove his case would, yet again, benefit Appellee.

Fourth, a party cannot have an attorney in small claims court. *See Cal. Code of Civ. Proc.* § 116.530. Although it is true that a consumer generally has no right to an attorney in civil cases, most consumer have no problem finding an attorney in TCPA and/or Rosenthal FDCPA cases because most consumer statutes, like the Rosenthal FDCPA for example, contain an attorney fee provision. *See Cal. Civ. Code* § 1788.30(c)

Moreover, attorneys generally litigate TCPA and Rosenthal FDCPA cases because of the statutes' complexity. This is so because a consumer, without any legal knowledge, would be unable to present his or her case effectively. In other

words, the reality is that an average consumer would not be able to argue to a small claims court judge how a defendant violated the TCPA, because, as discussed above, the TCPA is a complex statute subject to several requirements.

Fifth, a plaintiff filing a small claims court action has no right to a jury trial at any point in a small claims action. *See Crouchman v. Sup.Ct. (El Dorado Investors)*, 45 Cal.3d 1167, 1172-1173 (1988) [holding that there is not right to a jury trial in small claims court].

Sixth, a plaintiff who has chosen the small claims forum must accept the result and is not entitled to appeal an adverse small claims court judgment. *See Cal. Code of Civ. Proc.* § 116.710(a). Only, a defendant may appeal from an adverse small claims court judgment and obtain a trial de novo in superior court. *See Cal. Code of Civ. Proc.* § 116.710(b).

Indeed, the lack of an opportunity to appeal is detrimental to Appellant. If a small claims court judge[11] makes a legally incorrect decision, Appellant would have no right to appeal the decision. This can be fatal, because, it should come as no surprise, judges make mistakes and inaccurate rulings all the time, especially in cases involving complex legal issues. This is why the American judicial system provides for an appellate procedure in both state and federal courts. Again, this inures to

---

[11] Small claims court proceedings in the County of San Diego are generally handled by "pro tems" who are attorneys, serving as temporary judges.

Appellee's benefit because Appellant gets only one shot; that is, if Appellee loses, Appellee would have the right to appeal the decision whereas if Appellant loses, Appellant would have *no* right to appeal.

Finally, there is an annual limitation on filing small claims court actions. A plaintiff may not file more than two small claims court actions for more than $2,500.00 in the same calendar year anywhere in the state of California. In fact, a plaintiff must file a declaration stating compliance with this rule whenever the claim is over $2,500.00. *See Cal. Code of Civ. Proc.* § 116.231(a)-(b).

Therefore, if a person had already filed two claims in small claims court, he or she would not be able to bring another claim, which again would benefit the Appellee.

Clearly, for these reasons, allowing Appellee to litigate all of its claims in any judicial forum while limiting Appellant to the jurisdiction of the small claims court is unfair; thus, making the arbitration clause substantively unconscionable.

### b. *Appellee's Arbitration Clause Is Substantive Unconscionable Because It Limits Appellant's Right To Discovery*

Aside from being substantively unconscionable due to lack of mutuality, the arbitration clause is also substantively unconscionable because it limits Appellant's right to discovery.

It is well established that the limitation on discovery supports substantive unconscionability. *Fitz,* 118 Cal.App. 4th at pp. 715–719; *Armendariz v. Found.*

*Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 105-106 (2000); *Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App. 4th 1322, 1332 (1999).

To determine whether the limitation on discovery is substantively unconscionable, courts generally look to the amount of discovery permitted, the standard for obtaining additional discovery, and the evidence presented by the plaintiff that the discovery limitations will prevent him from adequately arbitrating his statutory claims. *Poublon*, 846 F.3d at p. 1270.

The arbitration clause in this case forces Appellant to arbitrate his claims with American Arbitration Association ("AAA"). The arbitration clause does not set forth any rules regarding discovery and instead indicates that the AAA Rules apply.[12]

Under the AAA rules, discovery is very limited and subject to the complete discretion of the arbitrator. Rule R-22 of the AAA Rules, entitled "Exchange of Information between Parties," would govern in this case and it states the following:

    (a) If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

        1) specific documents and other information to be shared between the consumer and business, and

        2) that the consumer and business identity the witnesses, if any, they plan to have testify at the hearing.

---

[12] While the arbitration clause referred to AAA's Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes, AAA has since enacted and developed the Consumer Arbitration Rules, which governs consumer cases, like this case.

(b)  Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

(c)  No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide a fundamentally fair process.

(d)  The arbitrator has authority to resolve any disputes between the parties about exchanging information.

Unlike the discovery rules of the Federal Rules of Civil Procedure, Appellant has absolutely no right to discovery other than what is laid out in Rule R-22. The arbitrator has complete discretion as to the form, amount, and frequency of the discovery. Rule R-22 says nothing about depositions, interrogatories, document requests or even the use of an expert witness. In fact, a closer look indicates that under Rule R-22 Appellant is not permitted to serve any written discovery (i.e., interrogatories or request for documents), or even take a single deposition. Although Rule R-22 does indicate that upon request by a party, the arbitration "may" direct specific documents or other information to be shared, there is no right to serve a request for production of documents. Nor does Rule R-22 allow Appellant to use an expert.

Clearly, the limitation on discovery in this case is even more severe than in the cases where the lack of discovery amounted to substantive unconscionability. For example, in *Fitz*, the California Court of Appeal found the arbitration clause

substantively unconscionable because it limited plaintiff to only two depositions and no written discovery. *Fitz*, 118 Cal.App.4th at p. 717-718. Unlike the plaintiff in *Fitz*, the Appellant here is not even allowed to take a single deposition let alone propound written discovery.

Similarly, in cases were no substantive unconscionability was found, the plaintiff was generally allowed to conduct some depositions and written discovery. *See e.g. Sanchez v. Carmax Auto Superstores California, LLC*, 224 Cal.App.4th 398, 403 (2014) [rejecting plaintiff's argument that three depositions, 20 interrogatories, and the right to obtain relevant documents was substantively unconscionable]; *Poublon*, 846 F.3d at p. 1269-1271 [applying California law and rejecting plaintiff's argument that the arbitration agreement was substantively unconscionable because plaintiff had the right to take three depositions and could obtain all relevant documents.]

Rule R-22 makes it clear that no deposition or written discovery is allowed and that any exchange of documents in excess of what is permitted under R-22(a) can only be obtained if the arbitrator, in his/her discretion determines further information exchange is needed to provide a fundamentally fair process.

The limited discovery in this case prevents Appellant from being able to adequately prosecute his statutory claims under the TCPA and Rosenthal FDCPA. For good measure, Appellant reiterates that he is not allowed to take a single

deposition or propound any written discovery. Nor is Appellant allowed to use an expert witness. The lack of discovery provided by the AAA rules is fatal to Appellant's claims under the TCPA and Rosenthal FDCPA. Both the TCPA and the Rosenthal FDCPA are complex consumer statutes that cannot be proven without adequate discovery.

For example, as indicated above, to establish whether Appellee used an ATDS when it made the calls to Appellant's cellular telephone is an element of a TCPA claim that is always hotly contested in TCPA actions. *See e.g. Satterfield,* 569 F.3d p. 950-51; *Meyer,* 707 F.3d at p. 1043.

Accordingly, without the right to conduct proper discovery, such as taking at least one deposition and propounding some written discovery (e.g., interrogatories and request for production of documents), it would be impossible to show that an ATDS was used by the Appellee since most of the information regarding the type of dialer used by Appellee to call Appellant are all in the possession of Appellee.

In fact, most of the evidence in this case is in the possession of the Appellee and not the Appellant. For example, the type of dialer used, the collection notes, electronic data relating to Appellant's account and calls, and the information relating to the frequency and timing of the telephone calls.[13] Appellant has absolutely no

---

[13] To the extend Appellee takes the position that Appellant can determine the frequency and timing of the calls by looking at his telephone bill, such argument is

access to this information unless he conducts discovery. This information is clearly available under the discovery rules of the Federal Rules of Civil Procedure, but not under the AAA rules.

Appellee knows that without depositions and written discovery, Appellant would not be able to prove his case, especially in TCPA cases. This is why Appellee wants to go to arbitration because it knows that discovery is very limited under the AAA rules and that Appellant would not be able to obtain the information he needs to prove his case.

Although these rules apply to both parties, the limits on discovery are not mutual since most of the evidence is in the possession of the Appellee yet the burden of proof is on the Appellant—the plaintiff in this case. *See e.g. Fitz*, 118 Cal.App.4th at 716 [court rejected defendant's arguments that limits on discovery were mutual because they applied equally to both parties because most of the evidence was in the possession of the Defendant]; *Kinney,* 70 Cal.App. 4th at p. 1332 ["Given that United is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim against United."].

---

meritless because telephone calls that are not connected, or not picked up or go directly to voicemail, do not show up on Appellant's telephone bill.

Clearly, Appellant, who is the plaintiff and has the burden of proof, is in greater need of discovery than Appellee in this case. As such, the limited scope of discovery supports a finding of substantive unconscionability.

The district court, however, rejected Appellant's argument that the discovery limitation makes the arbitration clause substantively unconscionable. <u>First</u>, it concluded that "federal courts have refused to find limitations on arbitral discovery unconscionable" after the Supreme Court decision in *Concepcion*. ER 45.

This, however, is an incorrect statement because district courts within California have actually concluded, after *Concepcion*, that the limitation on discovery may render an arbitration agreement substantively unconscionable. *See e.g. Ridgeway v. Nabors Completion & Production Service Co*., 2015 WL 5971545 at \*3-4 (C.D. Cal. 2015); *Reyes v. United Healthcare Services, Inc*., 2014 WL 3926813 at \*5 (C.D. Cal. 2014); *O'Hanlon v. JPMorgan Chase Bank, N.A*., 2015 WL 5884844, at \*7 (C.D. Cal. 2015).

Furthermore, the Ninth Circuit, applying California law, recently acknowledged that a limitation on discovery may support substantive unconscionability. *See e.g. Poublon*, 846 F.3d at p. 1269-1271 [The Ninth Circuit analyzed whether the limitation of discovery supported appellant's claim that the arbitration agreement was substantively unconscionable].

<u>Second</u>, the district court stated that Appellant "has failed to support his

argument with case law outside of the employment context." ER 45. But Appellant need not cite to any cases outside of the employment context because it makes no difference whether the case is a consumer case, a commercial case, or an employment case, since the unconscionability analysis is applied equally to commercial, consumer, and employment contracts. *See Walnut Producers of Calif. v. Diamond Foods, Inc.*, 187 Cal.App.4th 634, 644 (2010), *review denied* (Nov. 10, 2010.)[14] Therefore, the district court erred in concluding that Appellant should have cited case law outside of the employment context.

Finally, without citing to any legal authority, the district court rejected Appellant's argument that the limitation in the arbitration clause is substantively unconscionable because Rule R-22 of the AAA Rules does not "completely eliminate discovery." ER 45. This reasoning is meritless because Appellant is not required to show that the arbitration clause "completely eliminated discovery" in order to prove substantive unconscionability. All Appellant needs to show, is that

---

[14] The Ninth Circuit is bound by the decision in *Walnut*—which stands for the proposition that the defense of unconscionability applies equally to commercial, consumer, and employment contracts— in the absence of any decision on this issue by the California Supreme Court. *See Poublon*, 846 F.3d at p. 1266. The only way the Ninth Circuit can depart from *Walnut* is if there is "persuasive data" that the California Supreme Court would reach a different conclusion. *Id.* There is no "persuasive data" in this case that the California Supreme court would reach the opposite position, and the fact that California Supreme Court declined to review *Walnut* supports that conclusion. *See Poublon*, 846 F.3d 1251, at p. 1267 citing to *Tenneco W., Inc. v. Marathon Oil Co*., 756 F.2d 769, 771 (9th Cir. 1985).

the scope of discovery provided in the arbitration clause is minimal; in effect, preventing Appellant the ability to adequately prosecute his statutory claim. *Poublon*, 846 F.3d at p. 1270 citing to *Armendariz*, 24 Cal.4th at p. 106. As indicated above, Appellant made that showing here.

Accordingly, for the reasons stated above, the arbitration clause is substantively unconscionable.

### c. *Appellee's Arbitration Clause Is Substantively Unconscionable Because It Is Beneficial To Appellee And Detrimental To The Appellant*

In addition to being substantively unconscionable due to the lack of mutuality and limitation of discovery, the arbitration clause is also substantively unconscionable because it is unfairly beneficial to the Appellee and completely detrimental to the Appellant for at least three additional reasons.

First, by forcing the arbitration clause upon consumers, including Appellant, without an opportunity to reject it, Appellee knows that most consumers would not bring an arbitration claim against it, which benefits Appellee greatly. The CFPB's study clearly supports this conclusion.

According to the CFPB, consumers are less likely to file a claim for arbitration as opposed to an action in court. The CFPB found that there were about 411 arbitration filings by a consumer between 2010 and 2012. By contrast, consumers filed approximately 3,500 claims in court during the same time frame. *See*

Consumer Financial Protection Bur., Arbitration Study: Rep. to Congress Pursuant to the Dodd–Frank Act (Mar. 2015) § 1.4.3, p. 11 and § 6.2.1, p. 6.

Indeed, by including arbitration clauses in its agreements, Appellee creates a shield, which prevents Appellee from getting sued in court while at the same time using the judicial forum as its sword to file numerous collection cases against consumers. An unfair result; one that not only frustrates all consumer statutes, but also one that essentially renders them useless.

Second, the arbitration clause is completely one sided because Appellee unilaterally decided AAA to be the arbitration administrator. It did not even give Appellant a second option by including another arbitration administrator, let alone an opportunity to pick an arbitration administrator of Appellant's own choice. Why does this matter? It matters because other arbitration administrators, like JAMS for example, have rules that are a little more evenhanded than the AAA rules.

By way of example, unlike Rule R-22 under the AAA rules, Rule 17 of the JAMS rules, allows Appellant to at least one deposition, exchange of documents, and expert witnesses. Moreover, if Appellant needs additional depositions, he is only required to show a reasonable need for it, unlike Rule R-22 which does not allow for depositions at all. Clearly, most, if not all, consumers would choose JAMS as the arbitration forum to prosecute their TCPA case since they are allowed, at the very least, to conduct some limited discovery such as taking a deposition.

<u>Finally</u>, the arbitration clause unilaterally took away Appellant's First Amendment right to prosecute this case in a judicial forum. This is a fundamental right that every person in America has. To unilaterally take away this fundamental right is to strip this right; and without even giving a consumer (here Appellant) the choice to either reject or opt out of arbitration, is clearly unfair, especially when Appellee did not give up its own right to litigate its claims in a judicial forum as is the case here.

In short, it is clear, that the arbitration clause does not benefit Appellant whatsoever, and in fact is a detriment to the Appellant.

For these reasons, the arbitration clause is substantively unconscionable.

### d. *Sliding Scale Of Unconscionability*

Both procedural and substantive unconscionability are strongly present in this case, rendering Appellee's arbitration clause unconscionable. Accordingly, the district court's judgment should be reversed for this reasons as well.

## VIII. CONCLUSION

For the reasons stated above, Appellant respectfully requests that the Judgment below be REVERSED and the case be remanded.

Respectfully submitted,

Dated: July 21, 2017            **MASHIRI LAW FIRM**
A Professional Corporation
<u>s/ Alex Asil Mashiri</u>
Alex Asil Mashiri, Esq.

## IX.    STATEMENT OF RELATED CASES

Under Circuit Rule 28-2.6, the undersigned counsel declares that as to the constitutional waiver issue only, there are currently two cases in front of the Ninth Circuit who raise the same or closely related issue. *See Roberts v. AT&T Mobility,* Case No. 16-16915 and *Ziba Youssofi v. Credit One Bank,* Case No. 17-55275.

The Ninth Circuit granted the appellants' petition for interlocutory appeal in *Roberts v. AT&T Mobility* to address whether a state action existed. The *Roberts* case may be related because the parties somewhat raised the knowing, voluntary, and intelligent waiver standard in their briefs, although that is not the focus on appeal. According to the Ninth Circuit docket, briefing may have been concluded and oral argument may be scheduled sometime in October 2017.

The Ninth Circuit granted the appellant's petition for interlocutory appeal in *Ziba Youssofi v. Credit One Bank* to address whether the knowing, voluntary, and intelligent waiver standard, particularly to an individual's First Amendment right under the Petition Clause, applies to adhesion arbitration agreements. The Appellant in that case is represented by the same attorney, Alex Asil Mashiri. The opening brief was filed on July 10, 2017.

## X.    CERTIFICATE OF COMPLIANCE

I Certify pursuant to Fed. R. App. P. 32a(7)(B) and Ninth Circuit Rule 32-1 that Appellant's Opening Brief complies with the type-volume limitation of Fed. R.

App. P. 32(a)(5)-(6) as it is proportionally spaced, has a typeface of 14 points, and contains 13594 words including footnotes based on Microsoft Word.  The portions excluded from the word count are sections IX and X as well as the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated:  July 21, 2017                    **MASHIRI LAW FIRM**
                                         A Professional Corporation

                                         <u>/s/ Alex Asil Mashiri</u>
                                         Alex Asil Mashiri, Esq.

9th Circuit Case Number(s) | 17-55070

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the
United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system
on (date) | July 21, 2017 |.

I certify that all participants in the case are registered CM/ECF users and that service will be
accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s Alex Asil Mashiri

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the
United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system
on (date) | |.

Participants in the case who are registered CM/ECF users will be served by the appellate
CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I
have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it
to a third party commercial carrier for delivery within 3 calendar days to the following
non-CM/ECF participants:

Signature (use "s/" format) |