No. 17-55070

# United States Court Of Appeals
# For The Ninth Circuit

MELAD YOUSSOFI,

*Plaintiff,*

vs.

WELLS FARGO BANK, N.A.,

*Defendant.*

*Appeal from United States District Court, Southern District of California,*
*Case No. 3:16-cv-01330-MMA-LMA • Hon. Michael M. Anello*

# Appellee's Brief

Jan T. Chilton (State Bar No. 47582)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant and Appellee
Wells Fargo Bank, N.A.

## CORPORATE DISCLOSURE STATEMENT

[Fed. R. App. 26.1]

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant and appellee states:

Wells Fargo Bank, N.A. is a wholly owned subsidiary of Wells Fargo & Co., which is publicly traded on the New York Stock Exchange under the symbol WFC. Wells Fargo & Co. is a publicly traded corporation that has no parent corporation.

## TABLE OF CONTENTS

*Page*

I.    JURISDICTIONAL STATEMENT ................................................ 1

II.    QUESTION PRESENTED ........................................................... 1

III.    STATEMENT OF THE CASE ..................................................... 2

    A.    Substantive Facts ............................................................ 2

    B.    Procedural Facts ............................................................. 3

IV.    STANDARDS OF REVIEW ........................................................ 5

V.    SUMMARY OF ARGUMENT .................................................... 6

VI.    YOUSSOFI AGREED TO ARBITRATION ............................... 9

    A.    Youssofi Is Bound By His Signature
On The Credit Card Application And Agreement .............. 10

    B.    The Credit Card Application And Agreement Incorporated
The Customer Agreement's Arbitration Clause By Reference .......... 12

VII.    THE FIRST AMENDMENT REQUIRES NO HIGHER STANDARD
OF CONSENT TO ARBITRATION ........................................... 17

    A.    An Arbitration Clause In A Private Contract Does Not Waive
A Party's Constitutional Right To Petition Government ............ 17

    B.    If It Meets FAA Standards, An Arbitration Agreement
Is Enforceable  Even If It Waives Constitutional Rights ............ 22

        1.    Congress Shapes The Conditions For Exercise
Of First Amendment Rights ...................................... 22

        2.    Courts Cannot Override The Standard Congress Chose .......... 26

VIII.    THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE ...... 28

    A.    Aside From Its Being An Adhesion Contract,
The Arbitration Clause Was Not Procedurally Unconscionable ........ 29

    B.    The Arbitration Clause Is Not Substantively Unconscionable .......... 32

        1.    The Arbitration Clause Does Not Lack Mutuality .................. 33

## TABLE OF CONTENTS

*Page*

(a)    Arbitration Of Consumer Debt Collection Disputes Is Prohibited At AAA's Insistence To Protect Consumers .......................................................................34

(b)    The Arbitration Clause's Preservation Of Rights Provision Is Not Substantively Unconscionable ............38

(c)    The Small Claims Court Carve Out Provides Balances Out Any Remaining Lack Of Mutuality .........41

2.    The AAA's Rules Regarding Discovery Are Not Substantively Unconscionable ....................................44

3.    Arbitration Is Not Unconscionable ...........................................50

IX.    CONCLUSION ...............................................................................53

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Am. Heritage Life Ins. Co. v. Orr,* 294 F.3d 702 (5th Cir. 2002) ......................21, 27

*Apao v. Bank of New York,* 324 F.3d 1091 (9th Cir. 2003) ......................................19

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
    24 Cal. 4th 83 (2000) ..................................................................................34

*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011) ....................29, 34, 51, 52

*Baltazar v. Forever 21, Inc.,* 62 Cal.4th 1237 (2016) ......................................32, 40

*Beach v. Ocwen Fed. Bank,* 523 U.S. 410 (1998) ..................................................23

*Boghos v. Certain Underwriters at Lloyd's of London,*
    36 Cal.4th 495 (2005) ..................................................................................49

*Borgarding v. JPMorgan Chase Bank,*
    2016 WL 8904413 (C.D. Cal. 2016) ............................................................47

*Burrage v. United States,* __ U.S. __, 134 S. Ct. 881 (2014) ................................26

*Caley v. Gulfstream Aerospace Corp.,*
    428 F.3d 1359 (11th Cir. 2006) ..............................................................21, 27

*Campbell v. PMI Food Equip. Grp., Inc.,*
    509 F.3d 776 (6th Cir. 2007) ......................................................................18

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC,*
    816 F.3d 1208 (9th Cir. 2016) ......................................................................5

*Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282 (9th Cir. 1988) ..................21

*Tompkins v. 23andMe, Inc.,* 840 F.3d 1016 (9th Cir. 2016)..................................51

*Consol. Edison Co. v. Pub. Serv. Comm'n,* 447 U.S. 530 (1980) ..........................23

*Cooper v. MRM Inv. Co.,* 367 F.3d 493 (6th Cir. 2004)........................................21

*Crouchman v. Superior Court,* 45 Cal.3d 1167 (1988) ..........................................42

*Davis v. Prudential Secs., Inc.,* 59 F.3d 1186 (11th Cir. 1995)..............................19

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*,
    191 F.3d 198 (2d Cir. 1999) ..........................................................................19

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)....................................25

*Duffield v. Robertson Stephens & Co.*,
    144 F.3d 1182 (9th Cir. 1998) ...............................................................8, 19

*EEOC v. Luce, Forward, Hamilton & Scripps*,
    345 F.3d 742 (9th Cir. 2003) (en banc) ..........................................................8

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)................................5

*Fisher v. Biozone Pharm., Inc.*, 2017 WL 1097198 (N.D. Cal. 2017)....................19

*Fitz v. NCR Corp.*, 118 Cal.App.4th 702 (2004) ...................................................47

*Flagg Brothers Inc. v. Brooks*, 436 U.S. 149 (1978)....................................8, 17, 19

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007)...................................29

*Glass v. Najafi*, 78 Cal.App.4th 45 (2000) .............................................................41

*Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807 (1981).........................................11, 12

*Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) .........................1

*Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77 (2003) ........................................12

*Hosp. & Institutional Workers Local 250 v. Pasatiempo Dev. Corp.*,
    627 F.2d 1011 (9th Cir. 1980) ........................................................................5

*Hudgens v. NLRB*, 424 U.S. 507 (1976).................................................................18

*IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*,
    512 F.3d 989 (7th Cir. 2008) ........................................................................20

*Jackson v. Village of W. Springs*, 612 Fed.App. 842 (7th Cir. 2015).....................18

*King v. Larsen Realty, Inc.*, 121 Cal.App.3d 349 (1981) ..................................11, 12

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000).......................5

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Lewis v. Prudential-Bache Sec., Inc.,* 179 Cal.App.3d 935 (1986).........................52

*Lugar v. Edmondson Oil Co*., 457 U.S. 922 (1982) ......................................8, 17, 18

*Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699 (1976) ...........................12

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,*
    89 Cal.App.4th 1042 (2001) ..........................................................................31

*MediVas, LLC v. Marubeni Corp.,* 741 F.3d 4 (9th Cir. 2014) .................................1

*Metters v. Ralphs Grocery Co.*, 161 Cal.App.4th 696 (2008)................................10

*Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91 (2011)...........................................26

*Mortenson v. Bresnan Commc'ns, LLC,*
    722 F.3d 1151 (9th Cir. 2013) .................................................................. 25-26

*Meyers v. Univest Home Loan, Inc*.,
    1993 WL 307747 (N.D. Cal. 1993) ...............................................................41

*Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305 (2005).....................43

*Moule v. United Parcel Serv. Co.,*
    2016 WL 3648961 (E.D. Cal. 2016) ..............................................................47

*Nguyen v. Applied Med. Res. Corp*., 4 Cal.App.5th 232 (2016) ............................12

*Ohno v. Yasuma*, 723 F.3d 984 (9th Cir. 2013)................................................. 19-20

*Perry v. Thomas,* 482 U.S. 483 (1987) ...................................................................29

*Pierson v. Dean, Witter, Reynolds, Inc*., 742 F.2d 334 (7th Cir. 1984) .................21

*Poublon v. C.H. Robinson Co*.,
    846 F.3d 1251 (9th Cir. 2017) ................................................28. 29, 32, 46, 47

*Prima Paint Corp. v. Flood & Conklin Mfg. Co*.,
    388 U.S. 395 (1967)........................................................................................26

*Rutledge v. Elec. Hose & Rubber Co*., 511 F.2d 668 (9th Cir. 1975) ....................27

*Salazar v. Buono*, 559 U.S. 700 (2010) .................................................................27

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal.4th 899 (2015) ........................................................28, 31, 32, 38, 39

*Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941) ...........................................................23

*Smith v. Am. Arbitration Ass'n,* 233 F.3d 502 (7th Cir. 2000) ...............................19

*Snowden v. CheckPoint Check Cashing*,
  290 F.3d 631 (4th Cir. 2002) .........................................................21

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
  926 F.2d 865 (9th Cir. 1991) .........................................................19

*Steadman v. SEC*, 450 U.S. 91 (1981) ...................................................................26

*Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519 (1997)...........................................34

*Sutton v. Atl. Richfield Co.*, 646 F.2d 407 (9th Cir. 1981) ...............................24, 27

*THI of New Mexico at Hobbs Ctr., LLC v. Patton*,
  741 F.3d 1162 (10th Cir. 2014) ......................................................51

*Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931 (9th Cir. 2001) ........................21

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016 (9th Cir. 2016)...................................51

*Toyo Tire Holdings of Am., Inc. v. Continental Tire North Am., Inc.*,
  609 F.3d 975 (9th Cir. 2010) .........................................................40

*United States v. Hicks,* 980 F.2d 963 (5th Cir. 1992) ......................................22, 23

*Walnut Producers v. Diamond Foods, Inc.*,
  187 Cal.App.4th 634 (2010) .........................................................49

*Wolschlager v. Fid. Nat'l Title Co.*, 111 Cal.App.4th 784 (2003) ..........................13

*Zivkovic v. S. California Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) ................................................24, 27

# TABLE OF AUTHORITIES

*Page(s)*

*Statutes*

**United States Constitution**
Article III, sections 1, 2 ...............................................................23
First Amendment .............................................................. 17-
Seventh Amendment.................................................................24, 27

**United States Code**
Title 9
Section 2 .........................................................8, 22, 24, 25
Section 13 ...........................................................................40
Title 28
Section 1291 ........................................................................1
Section 1331 ........................................................................1
Section 1367 ........................................................................1
Section 1391 ......................................................................23
Section 1658 ......................................................................23
Section 2702 ......................................................................23
Title 47
Section 227 ..........................................................................1

**Federal Rules of Civil Procedure**
Rule 38.........................................................................24, 27
Rule 59 ................................................................................1

**California Civil Code**
Section 1670.5 ...................................................................43
Sections 2923.5-2924*l* .......................................................41
Section 2983.2 ....................................................................41
Section 2983.3 ....................................................................41
Section 2987 .......................................................................41

**California Code of Civil Procedure**
Section 85 ...........................................................................43
Section 86 ...........................................................................43
Section 94 ...........................................................................43
Section 116.220 ..................................................................42
Section 116.221 ..................................................................42
Section 116.231 ..................................................................42

# TABLE OF AUTHORITIES

*Page(s)*

*Statutes*

California Code of Civil Procedure
    Section 116.310 ................................................................42
    Section 116.530 ................................................................42
    Section 116.710 ................................................................42
    Sections 580a-580e ...........................................................41
    Section 726 .....................................................................41
    Section 904.2 ...................................................................43
    Section 1281.8 .................................................................40
    Section 1287.4 .................................................................40
    Section 1298 ....................................................................41

California Rules of Court
    Rules 8.800-8.891 ............................................................43
    Rules 8.1000-8.1018 ........................................................43

*Other Authorities*

AAA Calls for Reform of Debt Collection Arbitration,
    64-OCT Disp. Resol. J. 5...................................................36

CFPB, Arbitration Study: Report to Congress pursuant
    to the Dodd-Frank Act (March 2015)..............................50, 51

CFPB, Final Rules re Arbitration Agreements,
    82 Fed. Reg. 33210 (July 19, 2017) ..................................37

CFPB, Proposed Rules re Arbitration Agreements,
    81 Fed.Reg. 32830, 32836 n. 97 (May 24, 2016).................37

Christopher R. Drahozal & Samantha Zyontz, Creditor Claims in
    Arbitration and in Court, 7 Hastings Bus. L.J. 77 (2011) ............36

FTC, Repairing a Broken System: Protecting Consumers
    in Debt Collection Litigation and Arbitration (July 2010)...........35

House Joint Res. 111 (115th Cong., 1st Sess.) (July 25, 2017)...............37

Jason Scott Johnston & Todd Zywicki, The Consumer Financial
    Protection Bureau's Arbitration Study: A Summary & Critique,
    35 No. 5 Banking & Fin. Services Pol'y Rep., 9 (May 2016) ......50

## TABLE OF AUTHORITIES

*Page(s)*

*Other Authorities*

Ramona L. Lampley, The CFPB Anti-Arbitration Proposal:
Let's Just Give Arbitration A Chance, 48 St. Mary's L.J. 313 (2016) .........50

Wright & Miller, Federal Practice & Procedure (3d ed. 2008)
Volume 13, sections 3524, 3525 .................................................................23

# I.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction of this case as plaintiff Melad Youssofi alleged a claim for violation of the Telephone Consumer Protection Act ("TCPA"; 47 U.S.C. § 227(b)) among other claims. 28 U.S.C. § 1331. The district court had supplemental jurisdiction over Youssofi's state law claims. 28 U.S.C. § 1367.

This Court has appellate jurisdiction under 28 U.S.C. § 1291. Youssofi appeals from judgment dismissing this action after the district court granted defendant and appellee Wells Fargo Bank, N.A.'s ("Wells Fargo's") motion to compel arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 86-87 (2000); *MediVas, LLC v. Marubeni Corp.,* 741 F.3d 4, 7 (9th Cir. 2014).

Judgment was entered on October 4, 2016. E.R. 35, 215 # 16. Youssofi filed a motion under Fed. R. Civ. P. 59(e) on November 1, 2016. E.R. 21, 24, 215 # 17. An order denying that motion was entered on December 21, 2016. E.R. 2, 216 # 21. Youssofi filed his notice of appeal on January 13, 2017. E.R. 1, 216 # 22.

# II.

## QUESTION PRESENTED

Was the district court correct in compelling arbitration of Youssofi's claims and in denying reconsideration of the order compelling arbitration?

## III.

## STATEMENT OF THE CASE

### A.    Substantive Facts

In September 2011, while he was employed as a teller at Wells Fargo, Youssofi applied for a secured credit card account.  E.R. 134:20-23, 137, 139.  To do so, Youssofi completed and signed a "Credit Card Application and Agreement."  E.R. 137. The paragraph above his signature contained the following terms:

> You agree to be bound by the terms and conditions of the Customer Agreement and Disclosure Statement, which will be sent to you and understand that the terms of your account may be changed at any time, subject to applicable law. … You hereby stipulate to the terms of the arbitration program described in the Customer Agreement and Disclosure Statement.

E.R. 137.

Wells Fargo accepted Youssofi's application and issued him the requested credit card at the end of September 2011.  E.R. 134:20-23.  Youssofi used the credit card and incurred debt which he did not repay.  E.R. 134:24-25.  Wells Fargo closed Youssofi's credit card account in February 2016.  E.R. 134: 26.

Wells Fargo called Youssofi to collect his unpaid credit card debt.  E.R. 134:25, 206:26-207:8.  According to Youssofi, in a February 2016 telephone conversation with a Wells Fargo representative, Youssofi revoked any consent to be called.  E.R. 207:9-10.  Nevertheless, Wells Fargo continued calling Youssofi.  E.R. 207:11-28.

Youssofi claims he suffered emotional distress from Wells Fargo's repeated collection calls. E.R. 208:15-21.

## B. Procedural Facts

Youssofi filed this suit in June 2016. E.R. 204, 214 # 1. His complaint alleged a TCPA claim as well as a claim for violation of California's Rosenthal Fair Debt Collection Practices Act. E.R. 208:25-212:2.

Wells Fargo answered and moved to compel arbitration under the arbitration clause in the Consumer Credit Card Customer Agreement & Disclosure Statement ("Customer Agreement") governing Youssofi's credit card account. E.R. 104, 214 # 3, 7.

In support of its motion to compel arbitration, Wells Fargo submitted a declaration authenticating Youssofi's credit card application as well as the five versions of the Customer Agreement effective during the years Youssofi's credit card account was open. E.R. 133, 134:21-23, 134:27-135:17, 137, 150, 162, 170, 178, 191.

The Customer Agreements contained an arbitration clause which stated, in part:

> Binding Arbitration. You and Wells Fargo Bank, N.A. (the "Bank") agree that if a Dispute arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. The foregoing notwithstanding, the Bank shall not initiate an arbitration to collect a consumer debt, but reserves the right to arbitrate all other disputes with its consumer customers. A "Dispute" is any unresolved disagreement between you and the Bank. … A Dispute also includes any disagreements about the meaning or application of this Arbitration

Agreement. This Arbitration Agreement shall survive the payment or closure of your Account. YOU UNDER-STAND AND AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT. As the sole exception to this Arbitration Agreement, you and the Bank retain the right to pursue in small claims court any Dispute that is within that court's jurisdiction. …

E.R. 157 ¶ 33(a), 166 ¶ 31(a); 174 ¶ 31(a), 185 ¶ 31(a), 199 ¶ 31(a).

The arbitration clause also stipulated that the parties' transactions involved interstate commerce and that the Federal Arbitration Act ("FAA"; 9 U.S.C. § 1 et seq.) would govern the arbitration clause and any arbitration held under it. E.R. 157 ¶ 33(b), 166 ¶ 31(b); 174 ¶ 31(b), 185 ¶ 31(b), 200 ¶ 31(b).

Youssofi opposed the motion to compel arbitration. E.R. 65, 215 #9. In support of his opposition, Youssofi submitted his own declaration in which he swore that when he applied for the credit card, he was not given any agreement containing an arbitration clause and he was not told that he was agreeing to arbitrate disputes or waiving his First Amendment rights. E.R. 99, 100:3-12. Youssofi also denied receiving any Customer Agreement from Wells Fargo in the mail. E.R. 100:13-18. He claimed he was unaware of any arbitration agreement or even of what arbitration was until his lawyer told him about it. E.R. 100:22-28.

Wells Fargo filed a reply. E.R. 50. The district court took the motion under submission without oral argument. E.R. 215 # 13. On October 24, 2016, the district

court entered its order granting the motion to compel arbitration.  E.R. 36, 215 # 15.  It entered a judgment of dismissal, without prejudice, the same day.  E.R. 35, 215 # 16.

On November 1, 2016, Yousoffi filed a motion for partial reconsideration.  E.R. 21, 215 # 17.  Wells Fargo filed opposition, and Youssofi replied.  E.R. 6, 15.  The district court entered its order denying the reconsideration motion on December 21, 2016.  E.R. 2, 216 # 21.  Youssofi filed his notice of appeal on January 13, 2017.  E.R. 1, 216 # 22.

# IV.

## STANDARDS OF REVIEW

Ordinarily, this Court reviews the district court's decision to compel arbitration de novo.  *Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016).  "[L]egal conclusions regarding the existence of a valid, binding contract are reviewed de novo and factual findings underlying it for clear error."  *Id.*; *Hosp. & Institutional Workers Local 250 v. Pasatiempo Dev. Corp*., 627 F.2d 1011, 1012 (9th Cir. 1980); *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947-48 (1995).

This Court reviews the district court's denial of reconsideration for abuse of discretion.  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000).

## V.

## SUMMARY OF ARGUMENT

Youssofi launches three attacks on the district court's order compelling arbitration. All three lack merit, so this Court should affirm.

First, Youssofi claims there was inadequate proof he agreed to arbitration. AOB 5-6, 12-21. He is wrong. Youssofi concedes he signed the Credit Card Application and Agreement. Right above his signature, that document stated expressly that by signing Youssofi agreed "to be bound by the terms and conditions of the Customer Agreement" and stipulated "to the terms of the arbitration program described in the Customer Agreement." E.R. 137.

Youssofi's argument that his signature is ineffective because he did not realize he was signing a contract is belied by the document's title, stated in large print, on the page he signed: "Credit Card Application and Agreement." Youssofi is also wrong in claiming there is an "adhesion contract" exception to the well-established rule that a party is bound by terms of a written contract he signs, even if he fails to read the contract and thus is unaware of its contents. California authority rejects his claim.

The Credit Card Application and Agreement properly incorporated the Customer Agreement's arbitration provisions by reference. The application clearly and unequivocally referenced those provisions by stating that the signer stipulated "to the terms of the arbitration program described in the Customer Agreement." E.R. 137.

The just-quoted words called the applicant's attention to the Customer Agreement's arbitration clause. By signing the application, Youssofi consented to that clause. There was sufficient evidence from which the district court could reasonably infer that the Customer Agreement was readily available to Youssofi, particularly as he was a Wells Fargo employee and bank teller. Youssofi offered no evidence to show the Customer Agreement was *not* readily available to him; he just denied actually receiving a copy of it.

Second, Youssofi contends that the arbitration clause waives his First Amendment right to petition government by barring him from suing in court. Such a waiver of constitutional rights, he claims, is ineffective unless it is "knowingly, voluntar[il]y and intelligently" given—a standard considerably more stringent than the ordinary rule for enforceability of contract terms. AOB 6-8, 21-31.

This same contention is also raised in two other appeals now pending in this Court; *Roberts v. AT&T Mobility*, No. 16-16915 and *Ziba Youssofi v. Credit One Bank*, No. 17-55275. As the *Roberts* case is now fully briefed and is set to be assigned to a panel in October 2016, it is likely that the Court will have already decided this challenge to arbitration clauses by the time it reaches this appeal. For that reason, there is little need to burden the Court with yet another full briefing of the issue.

Suffice it to say that Youssofi's argument lacks merit. It starts from an incorrect premise that the First Amendment grants Youssofi a right vis-à-vis Wells Fargo,

another private actor. It does not. "[M]ost rights secured by the Constitution are protected only against infringement by governments." *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 936 (1982) (*quoting Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 156 (1978)). The First Amendment's right to petition government is no exception. So an agreement between private parties to resolve a dispute in arbitration, not court, does not waive any constitutional right.

There is no state action here. "[N]either private arbitration nor the judicial act of enforcing it under the FAA constitutes state action." *Duffield v. Robertson Stephens & Co*., 144 F.3d 1182, 1202 (9th Cir. 1998), overruled on other grounds, *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc). And Youssofi cannot avoid the state action requirement by attacking a supposed waiver of his constitutional rights rather than directly asserting those rights. If the right protects only against government infringement, it is not "waived" by an agreement between private parties.

Moreover, even if this case involved a waiver of Youssofi's constitutional rights, Congress has prescribed how that waiver is accomplished. Under the FAA, an arbitration agreement is enforceable under the same standards as any other contract. 9 U.S.C. § 2. Congress may prescribe the means of waiving constitutional rights. It has done so here. The courts are not free to impose any higher standard of their own creation.

Third, Youssofi argues that the arbitration clause is unconscionable under California law. AOB 8, 31-57. The district court correctly rejected the argument. E.R. 42-45. While the clause bears a minimal degree of procedural unconscionability as it appears in an adhesion contract, it does not contain any substantively unconscionable provisions.

Contrary to Youssofi's contention, the arbitration clause does not lack mutuality. It excludes collection actions to protect customers, not to gain any unwarranted advantage for Wells Fargo. Arbitration's normal restrictions on discovery are not unconscionable, even in disputes involving statutory rights. Nor does the arbitration clause unduly favor Wells Fargo as Youssofi claims.

For all of these reasons, the district court correctly concluded that Youssofi agreed to arbitrate his dispute and that his agreement to do so was enforceable. It did not err in compelling arbitration. This Court should affirm.

## VI.

## YOUSSOFI AGREED TO ARBITRATION

Youssofi raises two arguments challenging the district court's finding that he agreed to the arbitration clause in Wells Fargo's Customer Agreement. Neither has merit for the reasons set forth below.

## A.  Youssofi Is Bound By His Signature On The Credit Card Application And Agreement

Youssofi first argues that even though he signed the Credit Card Application and Agreement, he is not bound by it either because it did not look like a contract or because it was an adhesion contract.  AOB 14-15.

Youssofi first quotes the rule that a signer is not bound by undisclosed contractual terms hidden in a "writing [that] does not appear to be a contract."  AOB 14 (quoting *Metters v. Ralphs Grocery Co.*, 161 Cal.App.4th 696, 701 (2008)).  That legal principle has no application here for a simple reason.  The document Youssofi signed clearly identifies itself as a contract.  Written in large print at the top of the first page—the page Youssofi signed—stands the title:  "Credit Card Application and Agreement."  E.R. 137.

Youssofi does not contend he did not read the title.  Nor does he argue that the title failed to clearly identify the document as one containing contractual terms.  Instead, he argues that he did not receive a copy of the separate Customer Agreement.  AOB 14 (citing E.R. 100:5-8 ("During the entire application process, I was not provided with an agreement that contained the arbitration clause, nor were the terms of the arbitration clause disclosed to me.")).  Non-receipt of the Customer Agreement is irrelevant.  What matters under *Metters'* rule is whether the Credit Card Application and Agreement—that Youssofi admits he signed—"appear[ed] to be a contract."  The

title "Credit Card Application and Agreement" unquestionably made the document appear to be a contract.

Youssofi also argues that adhesion contracts are an exception to the general rule that a party is bound by the terms of a contract he signs, whether or not he reads those terms. AOB 14-15 (quoting *King v. Larsen Realty, Inc.*, 121 Cal.App.3d 349, 358 (1981)). Contrary to Youssofi's argument, *King* does not hold that a signer is bound only by those of an adhesion contract's terms that he actually reads. That would be a truly revolutionary principle of contract law which would upset most consumer contracts, almost all of which are adhesion contracts and few of which are read—certainly in their entirety—by the consumers who sign them.

The California Supreme Court long ago rejected the notion that adhesion contracts are subject to any such onerous rule.

> To describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, "the beginning and not the end of the analysis insofar as enforceability of its terms is concerned." Thus, a contract of adhesion is fully enforceable according to its terms unless certain other factors are present which, under established legal rules legislative or judicial operate to render it otherwise.

*Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 819-20 (1981) (fns. & citations omitted).

As its citation of *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699 (1976) shows,[1] the portion of *King* that Youssofi quotes represents no radical departure from *Graham* but instead simply refers to the rule that consumers are not bound by an adhesion contract's *unconscionable* terms.  An adhesion contract's *unread* terms are fully enforceable unless they are also *unconscionable*.

> "[S]imply because a provision within a contract of adhesion is not read or understood by the nondrafting party does not justify a refusal to enforce it.  The unbargained-for term may only be denied enforcement if it is also substantively unreasonable."

*Nguyen v. Applied Med. Res. Corp.*, 4 Cal.App.5th 232, 249 (2016) (quoting *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 88 (2003)).

## B. The Credit Card Application And Agreement Incorporated The Customer Agreement's Arbitration Clause By Reference

Youssofi next challenges the district court's finding that the Credit Card Application and Agreement adequately incorporated by reference the terms of the Customer Agreement, and particularly its arbitration clause.  AOB 15-21; *see* E.R. 40:9-42:8.

Youssofi concedes that the district court applied the correct legal test.  An arbitration clause may be incorporated by reference in another agreement so long as

---

[1]  "The concept that a contract of adhesion should be interpreted and enforced differently from an ordinary contract has evolved from cases which have involved contractual provisions drafted and imposed by a party enjoying superior bargaining strength - provisions which unexpectedly and often unconscionably limit the obligations and liability of the party drafting the contract."  *Madden*, 17 Cal.3d at 710.

(1) the reference is clear and unequivocal, (2) the reference is called to the other party's attention and he consents to it, and (3) the incorporated agreement or clause is known to or easily available to the other party. *See* AOB, 15-16; E.R. 40:15-21 (both citing *Wolschlager v. Fid. Nat'l Title Co.*, 111 Cal.App.4th 784, 790 (2003)).

Youssofi also tacitly concedes that Wells Fargo satisfied the second of these requirements. AOB, 16. The Credit Application and Agreement called Youssofi's attention to the reference, stating just above his signature: "You hereby stipulate to the terms of the arbitration program described in the Customer Agreement and Disclosure Statement." E.R. 137. Youssofi consented by signing the Credit Application and Agreement. *Id.*

Youssofi argues that the first requirement was not met because the sentence quoted in the last paragraph "was essentially hidden in a lengthy and wordy paragraph written in small font." AOB 16. Youssofi claims the sentence should, instead, have been a separate paragraph or been in a different font to draw attention to it. *Id.*

Notably, Youssofi cites no authority for this argument. That is because none exists. Youssofi's argument is based on a misunderstanding of the first requirement. A "clear and unequivocal" reference to the incorporated contract or other material is required, not a "conspicuous" reference. *See Wolschlager,* 211 Cal.App.4th at 791. Clear and unequivocal reference is needed so the parties and court can be sure what is being incorporated. The Credit Card Application and Agreement's reference to "the

terms of the arbitration program described in the Customer Agreement and Disclosure Statement" unquestionably satisfies that requirement.  E.R. 137.  Youssofi does not suggest that there is any doubt about what agreement or what arbitration provision is being incorporated.  Whether that clear and unequivocal reference was conspicuous is beside the point.

Youssofi also challenges the district court's finding that the incorporated Customer Agreement was "easily available" to him.  AOB 17-21.  He argues that Wells Fargo introduced no evidence to prove easy availability and that the district court wrongly shifted the burden of proof to him to disprove that fact.  *Id.*

Youssofi is wrong.  It is unnecessary to decide which party bears the burden of proof on this issue because there was evidence from which the district court could, and did, properly infer—in the absence of any contrary evidence from Youssofi—that the Customer Agreement was easily available to him at the time he signed the Credit Application and Agreement.  E.R. 41:10-23.

The Credit Card Application and Agreement provided the needed evidence.  It stated that Wells Fargo would send a copy of the Customer Agreement to the applicant.  E.R. 137.  The district court could reasonably infer that if Wells Fargo sent the Customer Agreement to applicants, it would also provide the applicant a copy of the

agreement upon request at the time the applicant completed and signed the Credit Card Application and Agreement.[2]

Furthermore, the evidence showed that Youssofi was, himself, a Wells Fargo bank teller. E.R. 139. The district court could reasonably infer that a bank teller would, as a matter of course, have ready access to standardized customer agreements that the bank freely distributed to its customers and doubtless had available in its branch offices.[3]

Youssofi has suggested no reason why, if Wells Fargo was going to send the applicant a copy of the Customer Agreement anyway, it would refuse to provide the applicant a copy on request at the time he completed the application. Nor did Youssofi produce any evidence to show that he did request a copy or that Wells Fargo refused to provide one.

Thus, contrary to Youssofi's argument, AOB 19-21, the cases the district court cited, E.R. 41:15-19, are not distinguishable. Here, as in those cases, there was evidence from which the court could reasonably infer that the incorporated contract and arbitration clause were easily available to the customer at the time he signed the

---

[2] Youssofi tries to turn this reasonable inference on its head, claiming that the statement "the Customer Agreement will be sent to you" somehow shows that it was not easily available, upon request, at the time of signing the Credit Card Application and Agreement. AOB 18, 20. He is wrong. "I will send" does not logically imply that "I won't give you now if you ask for it."

[3] The Customer Agreement was also publicly posted on Wells Fargo's website. *See* https://www.wellsfargo.com/credit-cards/agreements/secured-card-agreement.

agreement incorporating them by reference. The evidence was different.[4] But no case requires proof by any particular means. Any evidence from which easy availability may be inferred suffices. As already shown, Wells Fargo provided sufficient evidence to support the district court's inference.

Finally, Youssofi's argument ignores the obvious. Particularly as a bank teller, he must have realized—as the Credit Card Application and Agreement expressly informed him—that the credit card account that he applied for would be governed by the terms of a written agreement. If, as he says, he never received that agreement, he certainly should have asked for a copy, taken one from the branch at which he worked, or looked on-line for a copy. Had Youssofi taken any of these steps he would have easily obtained a copy of the Customer Agreement, including its arbitration clause.

To be sure, Youssofi would have obtained the copy after he signed the Credit Card Application and Agreement. But that fact is not telling because the credit card account was an at-will contract. Youssofi accepted the terms of the Customer Agreement by using the credit card. *See* E.R. 150 ¶ 2, 162 ¶ 1, 170 ¶ 1, 178 ¶ 1, 191 ¶1. He could cancel the contract at any time if dissatisfied with the Customer Agreement's

---

[4]    The Credit Card Application and Agreement did not expressly offer a copy of the Customer Agreement on request or state where the customer could obtain a copy on-line. Nor did Wells Fargo submit a declaration averring a practice of providing the Customer Agreement when the application was signed. See AOB 20-21.

terms.  E.R. 156 ¶ 27, 165 ¶ 24, 174 ¶ 24, 184 ¶ 24, 198 ¶ 24.  So Youssofi's emphasis on easy availability of the Customer Agreement when he signed the Credit Card Application and Agreement is misplaced.  He reaffirmed and re-accepted the terms of the Customer Agreement, including its arbitration clause, each time he used the credit card.  *See* E.R. 134:24 ("Plaintiff incurred debt on the Credit Card ….").

In short, the district court did not err in finding that Youssofi agreed to arbitrate his dispute.

## VII.

## THE FIRST AMENDMENT REQUIRES
## NO HIGHER STANDARD OF CONSENT TO ARBITRATION

### A.    An Arbitration Clause In A Private Contract Does Not Waive
### A Party's Constitutional Right To Petition Government

Youssofi launches his constitutional argument from a false premise; namely, that the First Amendment protects a person's right to petition government from purely private infringement.  AOB 21-24.

Youssofi is wrong.  As already stated, "most rights secured by the Constitution are protected only against infringement by governments."  *Lugar*, 457 U.S. at 936; *Flagg Brothers Inc.,* 436 U.S. at 156.  The First Amendment is no exception.  It protects only against governmental interference.

> It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.  Thus, while statutory or common law may in some situations extend protection or

> provide redress against a private corporation or person who
> seeks to abridge the free expression of others, no such pro-
> tection or redress is provided by the Constitution itself.

*Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) (citation omitted).

It makes no difference that Youssofi invokes the right to petition government, not the right of free speech. The First Amendment guards both rights, making no distinction between them.[5] The amendment begins with the words "Congress shall make no law" showing that it is directed at governmental, not private, interference with the rights it enumerates. Those words apply to the right to petition just as much as the right of free speech. So, like the constitutional right of free speech, the constitutional right to petition, is a guarantee only against abridgment by government.[6]

"Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936. Youssofi's argument would have the contrary effect by "constitutionalizing" a broad swath of contract law. Many commonplace contract provisions impinge on freedom of speech, filing or prosecution of lawsuits, or due process

---

[5] "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people … to petition the Government for a redress of grievances." U.S. Const., 1st Amend.

[6] *See Jackson v. Village of W. Springs*, 612 Fed.App. 842, 847 (7th Cir. 2015) ("[A] plaintiff must allege that state actors actually interfered with his access to the courts to state a claim for relief under the First Amendment."); *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 789 (6th Cir. 2007) ("[A] 'cause of action for violation of the Petition Clause is subject to the same analysis applied to a claim arising under the Speech Clause.' ").

concerns.[7] If none of these provisions were enforceable absent the sort of "knowing, voluntary, and intelligent" waiver that Youssofi advocates here, *see* AOB 25-31, constitutional law would overwhelm the common law of contracts, vastly expanding the reach of federal law and federal judicial power and drastically restricting citizens' freedom of contract.

State action is plainly lacking here. "[N]either private arbitration nor the judicial act of enforcing it under the FAA constitutes state action." *Duffield*, 144 F.3d at 1202.[8] In the district court, Youssofi argued that the state action requirement was satisfied because Wells Fargo "is asking this Court to apply a constitutionally questionable federal statute, e.g. the FAA, to force Plaintiff out of court and into arbitration, in violation of his First Amendment right under the Petition Clause." E.R. 28:23-25. Oddly, Youssofi cited in support of this contention, a case that disproves it: *Ohno*

---

[7] To cite just a few examples: Confidentiality and non-disparagement clauses restrict speech. *See, e.g. Fisher v. Biozone Pharm., Inc*., 2017 WL 1097198, at *7 (N.D. Cal. 2017). Forum selection clauses restrict the filing of lawsuits. *See, e.g., Spradlin v. Lear Siegler Mgmt. Servs. Co*., 926 F.2d 865, 867 (9th Cir. 1991). Clauses creating self-help remedies, such as non-judicial foreclosure or self-help repossession, allow seizure of property without notice or hearing, the normal due process minimums. *See, e.g., Flagg Bros., Inc.,* 436 U.S. at 157; *Apao v. Bank of New York,* 324 F.3d 1091, 1094 (9th Cir. 2003).

[8] *Accord, Smith v. Am. Arbitration Ass'n,* 233 F.3d 502, 507 (7th Cir. 2000) ("The fact that the courts enforce these [arbitration] contracts … does not convert the contracts into state or federal action[.]"); *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.,* 191 F.3d 198, 207 (2d Cir. 1999) ("no state action in the application or enforcement of the arbitration clause"); *Davis v. Prudential Secs., Inc.,* 59 F.3d 1186, 1192 (11th Cir. 1995) ("mere confirmation of a private arbitration award by a district court is insufficient state action").

*v. Yasuma*, 723 F.3d 984, 994-96 (9th Cir. 2013). At most, Youssofi's argument satisfies the first prong of *Lugar's* test, showing that Wells Fargo exercised "some right or privilege created by the State." *Id.* at 994.

As in *Ohno*, Youssofi's argument does not address *Lugar's* second prong. It does not show that the party charged with the deprivation, Wells Fargo, is a state actor. *Id.* at 996. The fact that Wells Fargo has sought the court's aid in compelling arbitration or enforcing its rights under the FAA does not satisfy *Lugar's* second prong.

> Ohno's use of California's Uniform Act as a litigant does not make her a state actor through the public function test. Although the court assuredly performs a public purpose, a private individual seeking a remedy from a court is seeking gain for him or herself, a purely private act. "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator ... with the judge."

*Id.* (citation omitted).

Youssofi cannot dodge the state action requirement by simply characterizing his attack on the arbitration clause as invoking the constitutional waiver doctrine rather than asserting that Wells Fargo violated his First Amendment rights. *See* E.R. 25:26-27:21. Each of the decisions that Youssofi cites for that proposition involved a jury trial waiver. Even if Youssofi's cases correctly apply a heightened standard of consent to pre-dispute waivers of the right to a jury trial, neither those cases nor any others have required any heightened standard of consent for any contract provision

impinging on other constitutional rights.  *See IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union,* 512 F.3d 989, 993-94 (7th Cir. 2008) (criticizing Youssofi's cases for that very reason).

Not surprisingly, courts have uniformly rejected Youssofi's notion that an arbitration clause is unenforceable absent "knowing, voluntary, and intelligent" assent—even though loss of the right to sue in court as well as "the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate."  *Cohen v. Wedbush, Noble, Cooke, Inc*., 841 F.2d 282, 287 (9th Cir. 1988), overruled on other grounds, *Ticknor v. Choice Hotels Int'l, Inc*., 265 F.3d 931 (9th Cir. 2001) (*quoting Pierson v. Dean, Witter, Reynolds, Inc*., 742 F.2d 334, 339 (7th Cir. 1984)).[9]

In short, Youssofi's First Amendment-based argument founders on the state action requirement which he can neither satisfy nor avoid.  Simply stated, an arbitration agreement does not infringe on or waive a party's First Amendment right to petition government because that right guarantees against governmental encroachment, not private interference.  Since no constitutional right is waived, "knowing, voluntary, and intelligent" assent is not required for an arbitration clause, just as no such heightened standard of assent is required for other contract provisions.

---

[9]   *See Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1370-73 (11th Cir. 2006); *Cooper v. MRM Inv. Co.,* 367 F.3d 493, 506-07 (6th Cir. 2004): *Am. Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 711 (5th Cir. 2002); *Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 638 (4th Cir. 2002).

**B.** **If It Meets FAA Standards, An Arbitration Agreement Is Enforceable Even If It Waives Constitutional Rights**

Youssofi's First Amendment argument fails for another reason as well. It ignores Congress' role in shaping the conditions for exercise of First Amendment rights, including the right to petition government.

In the FAA, Congress did just that. It decreed that arbitration agreements are enforceable to the same extent other contracts are. 9 U.S.C. § 2. No higher standard of consent need be met. Congress thereby set the standard for waiver of any constitutional rights—whether the right to petition or the right to a jury trial—that are impacted by an agreement to arbitrate disputes.

Courts must follow that congressionally set waiver standard, not impose any different or heightened standard of their own choosing.

**1.** **Congress Shapes The Conditions For Exercise Of First Amendment Rights**

The rights guaranteed by the first ten amendments are not absolute.[10] They are subject to reasonable regulation by the political branches of government, particularly by Congress.

For example, Congress may shape the circumstances under which the right of free speech may be exercised through reasonable the time, place and manner regula-

---

[10] *See United States v. Hicks,* 980 F.2d 963, 971 (5th Cir. 1992) ("As the Supreme Court has repeatedly held, first amendment protections are not absolute, even in cases involving 'pure speech.' *See, e.g., Elrod v. Burns*, 427 U.S. 347, 360 … (1976).").

tions.  *See, e.g., Consol. Edison Co. v. Pub. Serv. Comm'n,* 447 U.S. 530, 535 (1980);

*Hicks*, 980 F.2d at 971.

Congress exercises even broader power to shape how citizens may exercise their right to petition government through the federal courts.  Under Article III, §§ 1, 2 of the Constitution, Congress has wide power to regulate the jurisdiction of lower federal courts as well as the Supreme Court's appellate jurisdiction, thus determining what suits citizens may pursue in federal court.  *See* 13 Wright & Miller, Federal Practice & Procedure, §§ 3524, 3525 (3d ed. 2008).  Congress also " has undoubted power to regulate the practice and procedure of federal courts," *Sibbach v. Wilson & Co*., 312 U.S. 1, 9 (1941), a power it has exercised by delegating rule-making authority to the Supreme Court, 28 U.S.C. § 2072.

Congress shapes the conditions for exercise of the right to petition through many other means as well.  By enacting statutes of limitation and statutes of repose, for example, Congress sets time limits on when suit can be brought.  *See, e.g., Beach v. Ocwen Fed. Bank,* 523 U.S. 410 (1998); 28 U.S.C. § 1658.  Venue statutes dictate where suit must be brought.  *See, e.g.,* 28 U.S.C. § 1391.

And, under Congress' delegated authority, the Supreme Court has adopted the Federal Rules of Civil Procedure, which regulate, in a broad variety of ways, how, where and when citizens may exercise their right to petition in the federal courts.

Congress' power to regulate in this area is certainly broad enough to encompass prescribing when and how an actual or potential litigant may or does waive his or her constitutional rights. Federal Rule of Civil Procedure 38(b) and (d) do just that. They provide that a litigant waives his or her constitutional right to a jury trial by failing to serve a written demand for a jury trial within 14 days after the last pleading is served. Rule 38 does not expressly require a "knowing, voluntary, or intelligent" waiver of the right to a jury trial. Nor is such a heightened standard of waiver constitutionally compelled by the Seventh Amendment. Instead, as this Court has held, a litigant waives his or her Seventh Amendment right to a jury trial simply by missing Rule 38's deadline, even though that act was neither knowing nor intelligent, but rather a result of the litigant's ignorance or even good faith mistake as to the deadline for demanding a jury trial. *See Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1086-87 (9th Cir. 2002); *Sutton v. Atl. Richfield Co.*, 646 F.2d 407, 409 n. 3 (9th Cir. 1981).

In the same way, by enacting the FAA, Congress prescribed another means by which a potential litigant waives his or her right to petition and right to a jury trial; that is, by entering into a written agreement to settle a future dispute by arbitration. 9 U.S.C. § 2. As is true of Rule 38, the FAA requires no heightened level of consent. Instead, it provides that an arbitration agreement "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*.

Thus, the FAA forbids courts from applying to arbitration agreements any requirement of disclosure or consent that is in addition to or excess of the requirements for enforcement of contracts generally. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In *Mortenson v. Bresnan Commc'ns, LLC,* 722 F.3d 1151 (9th Cir. 2013), this Court held that the very "knowing, voluntary, and intelligent" waiver standard of consent to arbitration which Youssofi champions was inconsistent with and therefore preempted by the FAA. At issue in *Mortenson* was Montana's rule

> that [because] arbitration agreements constitute a waiver of a party's fundamental constitutional rights to trial by jury and access to courts, all arbitration agreements where waiver is not "voluntarily, knowingly, and intelligently" made are void as a matter of public policy. Montana law defines "voluntarily, knowingly, and intelligently" made as requiring a consumer to be informed of the consequences of a provision and to personally consent to waiver after receiving the proper information. Under this generally applicable rule, only arbitration agreements explained to and initialed by consumers are valid and enforceable.

*Id*. at 1160 (citations omitted).

This Court concluded "that the reasonable expectations/fundamental rights rule runs contrary to the FAA as interpreted by *Concepcion* because it disproportionally

applies to arbitration agreements, invalidating them at a higher rate than other contract provisions. *Id*. at 1161.

## 2.    Courts Cannot Override The Standard Congress Chose

When Congress enacts legislation within the powers constitutionally conferred on it, courts may not override Congress' will "absent countervailing constitutional constraints." *See Burrage v. United States,* __ U.S. __, 134 S. Ct. 881, 892 (2014); *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 100 (2011); *Steadman v. SEC*, 450 U.S. 91, 95 (1981).

Congress enacted the FAA in the exercise of its powers over interstate commerce and admiralty. *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 405 & n. 13 (1967). "Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate." *Id*. "Federal courts are bound to apply rules enacted by Congress with respect to matters—here, a contract involving commerce—over which it has legislative power." *Id*. at 406.

As *Prima Paint* holds, federal courts must follow the rule that Congress enacted validating arbitration agreements that meet the same standard of consent normally applied to all other contracts. The courts may not override Congress' choice and require a heightened "knowing, voluntary, and intelligent" waiver standard, as Youssofi advocates, absent a clear constitutional command permitting waiver only by that

heightened standard. *See Salazar v. Buono*, 559 U.S. 700, 721 (2010) ("Respect for a coordinate branch of Government forbids striking down an Act of Congress except upon a clear showing of unconstitutionality.").

There is no such constitutional command. Rule 38 illustrates the point. As already stated, under that rule failure to meet the deadline for demanding a jury trial waives the litigant's Seventh Amendment right even if the failure is unknowing, inadvertent and the result of a good faith mistake. *See Zivkovic*, 302 F.3d at 1086-87; *Sutton*, 646 F.2d at 409 n. 3. If the Constitution required a "knowing, voluntary, and intelligent" waiver of the right to a jury trial, it would invalidate Rule 38. Yet, "[t]he waiver provisions of Rule 38 are constitutional." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 674 (9th Cir. 1975).

Like Rule 38, the FAA requires less than a "knowing, voluntary, and intelligent" waiver of the right to a jury trial. And, like Rule 38, the FAA passes constitutional muster. The federal courts hold that "general contract principles govern the enforceability of arbitration agreements and that no heightened 'knowing and voluntary' standard applies, even where the covered claims include federal statutory claims generally involving a jury trial right." *Caley*, 428 F.3d at 1172; *see also Am. Heritage Life Ins. Co.*, 294 F.3d at 711.

The right to petition government is no different. The First Amendment contains no clear command barring waivers that are less than fully "knowing, voluntary and

intelligent." So the FAA's express adoption of the ordinary contract law standard for consent to an arbitration agreement governs waiver of the right to petition just as it governs waiver of the right to a jury trial.

As already shown, Youssofi gave consent according to California's normal contract rules. *See* pp. 10-17 above. Under the FAA no more was or could be required.

<div align="center">

**VIII.**

**THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE**

</div>

Youssofi finally attacks the Customer Agreement's arbitration clause, claiming it is unconscionable. AOB 8, 32-57.

As the party asserting unconscionability, Youssofi bears the burden of establishing that the arbitration clause is both procedurally and substantively unconscionable. *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1260 (9th Cir. 2017); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 912 (2015); *see* AOB 32.

The district court held that since the arbitration clause was an adhesion contract, it was procedurally unconscionable to a minimal degree, but it found that the clause was not substantively unconscionable, and thus rejected Youssofi's attack on it. E.R. 43:19-45:27. The district court was correct in both respects. Youssofi's arguments to the contrary lack merit.

**A.     Aside From Its Being An Adhesion Contract,
          The Arbitration Clause Was Not Procedurally Unconscionable**

As the district court correctly determined, "[u]nder California law, the arbitration clause in the Customer Agreement is at least minimally procedurally unconscionable" because the Customer Agreement is an adhesion contract.  E.R. 43:8-26.  "Nevertheless, the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon*, 846 F.3d at 1261-62.

As the district court also correctly noted, the degree of procedural unconscionability here is particularly low since there is a highly competitive market for credit cards, offering consumers, like Youssofi, a wide range of choice.  E.R. 43:15-21.  "The existence of consumer choice decreases the extent of procedural unconscionability …."[11] *Gatton v. T-Mobile USA, Inc*., 152 Cal.App.4th 571, 583 (2007).

Turning to the "surprise" component of procedural unconscionability, Youssofi repeats his contention that the Customer Agreement was not "easily available" to him when he signed the Credit Card Application and Agreement.  E.R. 36.  As already shown, the district court's finding to the contrary was not clearly erroneous, being

---

[11]    Youssofi argues that he has shown a greater degree of procedural unconscionability because the arbitration clause "unilaterally stripp[ed] him of his constitutional right under the Petition Clause of the First Amendment to prosecute this action in a judicial forum.  AOB 35.  The FAA forbids that argument.  "[A] court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n. 9 (1987)).

supported by reasonable inferences from the evidence before it. *See* pp. 14-15 above. Also, the Customer Agreement was easily available to Youssofi each time he thereafter used his credit card, thus reaffirming his consent to the Customer Agreement's terms. *See* pp. 16-17 above.

Youssofi also complains that the arbitration clause is "not properly disclosed" in the Customer Agreement because it appears at the end of page 8. AOB 37. That complaint is unfounded. The arbitration clause is revealed in the table of contents at the start of the Customer Agreement. E.R. 150, 162, 170, 178, 191. The presence and nature of the arbitration clause is also clearly revealed by the title(s) that precede the clause's terms. In the version extant when Youssofi signed the Credit Card Application and Agreement, the two boldface titles preceding the arbitration clause said:

> **Arbitration**
>
> **(33)  DISPUTE RESOLUTION PROGRAM;
>          ARBITRATION AGREEMENT**

E.R. 157 ¶ 33(a).

In later versions of the Customer Agreements, the titles appeared in this form:

> **Arbitration**
>
> **(31)  Dispute Resolution Program; Arbitration Agreement**

E.R. 166 ¶ 31(a); 174 ¶ 31(a), 185 ¶ 31(a), 199 ¶ 31(a).

Even the quickest glance at the page would reveal these titles, thus bringing the arbitration clause to the reader's attention. The clause also contains two other disclo-

sures in boldfaced, all capital letter type, further revealing the clause's presence, importance, and content. *Id.*

Moreover, Wells Fargo "was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Youssofi's] attention. Any state law imposing such an obligation would be preempted by the FAA." *Sanchez*, 61 Cal.4th at 914 (citations omitted).

Finally, Youssofi claims "surprise" is present because he did not actually realize he had agreed to arbitrate any dispute rather than prosecute a case in a judicial forum. AOB 37. The argument is legally flawed. For purposes of procedural unconscionability, "surprise" does not and cannot depend on a party's subjective understanding of the agreement he signed. To hold otherwise would be to encourage a party to ignore an agreement's written terms in the hope of avoiding, as unconscionable, any term he might later find onerous.

In Youssofi's world, the rule would be: "Don't read the contract lest you be bound." California law adopts the opposite principle: "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,* 89 Cal.App.4th 1042, 1049 (2001). As already shown, that principle applies to all written agreements, including adhesion contracts. *See* pp. 11-12 above.

In short, the district court correctly held that the arbitration clause in this case was procedurally unconscionable to a minimal degree only because it was an adhesion contract, but otherwise it was free from any procedural unconscionability. E.R. 43:19-26.

## B.     The Arbitration Clause Is Not Substantively Unconscionable

To avoid the arbitration clause as unconscionable, Youssofi must also show that it is substantively unconscionable—that is, that it is *unreasonably* favorable to the more powerful party. *Poublon*, 846 F.3d at 1261 (*quoting Baltazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1244 (2016)); *see also Sanchez*, 61 Cal.4th at 911 ("[U]nconscionability requires a substantial degree of unfairness *beyond* '*a simple old-fashioned bad bargain*.'").

"An evaluation of unconscionability is highly dependent on context. The doctrine often requires inquiry into the 'commercial setting, purpose, and effect' of the contract or contract provision. As we have recognized, ' "a contract can provide a 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." ' " *Sanchez*, 61 Cal.4th at 911-12 (citations omitted).

Youssofi fires three arrows at the Customer Agreement's arbitration clause, hoping to demonstrate substantive unconscionability. All three fall short of their intended target for the reasons stated below.

### 1. The Arbitration Clause Does Not Lack Mutuality

Youssofi first argues that the Customer Agreement's arbitration clause is substantively unconscionable because it "lacks mutuality." AOB 39-47. Apart from pursuing a small claims court action, a customer is relegated to arbitration as the sole means of resolving a dispute. By contrast, Wells Fargo is allowed or compelled to pursue litigation in court to resolve some of its claims such as suits to collect a consumer debt or preserve, foreclose or obtain possession of real or personal property. *See* E.R. 40-41.

Citing a string of employment cases, Youssofi argues that the arbitration clause "lacks mutuality and is substantively unconscionable [because] it requires the weaker party [Youssofi] to arbitrate all of his claims, while the party with stronger bargaining power [Wells Fargo] is permitted to litigate all of its claims in a judicial forum." AOB 39-40.

This attack on the arbitration clause fails because it overlooks the reason California law requires a "modicum of bilaterality" in arbitration agreements and a key limitation to application of that requirement. To quote the California Supreme Court:

> We conclude that *Stirlen* and *Kinney* are correct in requiring this "modicum of bilaterality" in an arbitration agreement. Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-

sidedness based on "business realities." … Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose.

*Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 117-18 (2000), abrogated on other grounds, *Concepcion*, 563 U.S. 333.

In other words, it is unconscionable for the stronger party, "without reasonable justification," to seize for itself the "advantages" of a judicial forum while relegating the weaker party to the "disadvantages" of arbitration.[12]

Here, Wells Fargo has not seized advantages for itself while relegating its customers to "disadvantages" of arbitration. Moreover, it has compelling justifications for excluding some disputes from arbitration.

### (a) Arbitration Of Consumer Debt Collection Disputes Is Prohibited At AAA's Insistence To Protect Consumers

To begin with, the Customer Agreement's arbitration clause carves out consumer debt collection disputes by forbidding Wells Fargo from seeking to arbitrate those matters. It provides: "The foregoing notwithstanding, *the Bank shall not initiate an arbitration to collect a consumer debt*, but reserves the right to arbitrate all

---

[12] Among the cited "disadvantages that may exist for plaintiffs arbitrating disputes" are limitations on discovery, lack of privacy protections for victims of sexual harassment, and lack of appellate review. *See Stirlen v. Supercuts, Inc*., 51 Cal.App.4th 1519, 1537-38 (1997).

other disputes with its consumer customers." E.R. 157 ¶ 33(a); 166 ¶ 31(a), 174 ¶ 31(a), 185 ¶ 31(a), 199 ¶ 31(a) (emphasis added).

There is a compelling reason why the arbitration clause states this carve-out as a prohibition and treats it separately from the provision reserving certain other remedies. That reason is that the AAA will not accept consumer debt collection matters for arbitration. The AAA imposed a moratorium on arbitration of consumer debt collection in 2009[13] and has continued that moratorium ever since.[14] And that moratorium was implemented not to grant creditors, such as Wells Fargo additional "advantages," but rather to protect consumers.

In July 2009, the Minnesota Attorney General sued another arbitration provider, the National Arbitration Forum ("NAF"), for unfair practices in arbitrating consumer debt collection matters.[15] A few days later, a consent judgment was entered in the case, barring the NAF from thereafter handling *any* consumer arbitrations.[16]

---

[13] *See* https://www.nclc.org/images/pdf/arbitration/testimonysept09-exhibit3.pdf.

[14] *See* AAA Consumer Arbitration Fact Sheet (publicly available at http://info.adr. org/consumer-arbitration/): "Debt Collection Moratorium: In 2009, the AAA implemented a moratorium on the administration of debt collection arbitration programs. Matters included in this moratorium are consumer debt collection programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute, and the case involves a credit card bill, a telecom bill or a consumer finance matter."

[15] *See Minnesota ex rel. Swanson v. National Arbitration Forum,* 2009 WL 2029918 (Hennepin County Dist. Ct. No. 27-CV-09-18550; July 14, 2009) (complaint); *see also* FTC, Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration, 39-40 (July 2010) (publicly available at

A week later, AAA imposed its moratorium on consumer debt collection arbitrations. *See* n. 17 below. The AAA formed a National Task Force on the Arbitration of Consumer Debt Collection Disputes to study the problem.[17] In October 2010, the Task Force issued its *Consumer Debt Collection Due Process Protocol Statement of Principles* recommended a series of tighter standards to assure consumers were not disadvantaged by arbitration—more rigorous standards for serving notice of arbitration, better safeguards against repeat-player bias, and so forth.[18] The AAA submitted the Task Force's statement of principles to the federal government. The FTC was unimpressed. It wrote the CFPB, recommending that the CFPB further investigate the issue, pointing out what it considered to be needed additional protections for consum-

---

https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-staff-report-repairing-broken-system-protecting/debt collectionreport.pdf).

[16] *Id.,* 2009 WL 5424036 ¶ 2 (July 17, 2009) (consent judgment).

[17] *See* AAA Notice on Consumer Debt Collection Arbitration (publicly available at https://www.adr.org/sites/default/files/document_repository/Notice%20on%20Consu mer%20Debt%20Collection%20Arbitrations%20(1).pdf); AAA Calls for Reform of Debt Collection Arbitration, 64-OCT Disp. Resol. J. 5; Christopher R. Drahozal & Samantha Zyontz, Creditor Claims in Arbitration and in Court, 7 Hastings Bus. L.J. 77 (2011).

[18] Publicly available at https://www.resolutemediation.com/consumer-debt-collection-due-process-protocol-national-taskforce/.

ers in consumer debt collection arbitrations.[19]  There the matter stalled.[20]  So the AAA's moratorium continued in effect.

Thus, the federal government has dissuaded reputable dispute resolution providers from arbitrating consumer debt collection disputes.[21]  It has done so to protect consumers.

Accordingly, there is a compelling justification for the carve-out of consumer debt collection disputes from the Customer Agreement's arbitration clause; namely, largely at the government's urging AAA refuses to handle those disputes.  So Wells Fargo has no choice but to litigate consumer debt collection disputes in court.  Furthermore, consumer debt collection matters are not excluded from arbitration due to Wells Fargo's greater bargaining power or to confer any advantage on it, but for precisely the opposite reason—to protect consumers, at the government's behest.

---

[19]  *See* Letter from the Director, FTC Bureau of Consumer Protection to Elizabeth Warren, dated March 11, 2011 (publicly available at https://www.ftc.gov/sites/default/files/documents/public_statements/new-standards-consumer-debt-collection-arbitration-recently-released-american-arbitration/2011_aaa_standards_letter.pdf).

[20]  The CFPB seems to have subsumed its review of the AAA's efforts into the CFPB's more general rule-making proceeding on the subject of consumer arbitration, which recently resulted in promulgation of final rules that are currently being challenged in Congress.  *See* CFPB, Final Rules re Arbitration Agreements, 82 Fed. Reg. 33210 (July 19, 2017); House Joint Res. 111 (115th Cong., 1st Sess.) (July 25, 2017).

[21]  "JAMS has reported to the Bureau that it only handles a small number of debt collection claims and often those arbitrations are initiated by consumers."  CFPB, Proposed Rules re Arbitration Agreements, 81 Fed.Reg. 32830, 32836 n. 97 (May 24, 2016).

Under these circumstances, it cannot be substantively unconscionable for Wells Fargo to forbid itself an arbitral forum for consumer debt collection matters.

    **(b)**     **The Arbitration Clause's Preservation Of Rights Provision Is Not Substantively Unconscionable**

Subparagraph c of the Customer Agreement's arbitration clause preserves each party's rights to exercise a variety of ancillary rights despite having agreed to arbitration. *See* E.R. 157 ¶ 33(c); 166 ¶ 31(c), 175 ¶ 31(c), 186 ¶ 31(c), 200 ¶ 31(c). Contrary to Youssofi's argument, this subparagraph is not substantively unconscionable. *See* AOB 41-42.

In *Sanchez,* 61 Cal.4th at 922, the California Supreme Court recently upheld an arbitration clause's exclusion of self-help remedies similar to subparagraph c's preservation of the parties' right to "exercise self-help remedies, including setoff and repossession rights." To quote that decision:

> [W]e see nothing unconscionable about exempting the self-help remedy of repossession from arbitration. … [A]rbitration is intended as an alternative to litigation, and the unconscionability of an arbitration agreement is viewed in the context of the rights and remedies that otherwise would have been available to the parties. … Self-help remedies are, by definition, sought outside of litigation, and they are expressly authorized by statute. … Moreover, it is undisputed that the remedy of repossession of collateral is an integral part of the business of selling automobiles on credit and fulfills a " 'legitimate commercial need.' " We thus conclude that the exclusion of such a remedy from an arbitration agreement, while favorable to Valencia, is not unconscionable.

*Id.*

Youssofi's credit card account was secured by a collateral account. E.R. 134:20-21, 150, 162. The Customer Agreement gave Wells Fargo the right to apply funds from the collateral account to pay any amounts Youssofi owed on his credit card. E.R. 150, 162. Exercise of that self-help remedy was an integral part of the secured credit card account just as the self-help remedy of repossession is a part of the business of selling cars.[22] The collateral account and the issuer's right to offset any default against it fulfill a legitimate commercial need in reducing the card issuer's risk in extending credit to less credit-worthy individuals.[23]

Subparagraph c also preserves the parties' rights to "obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment, or the appointment of a receiver by a court of competent jurisdiction." This language does no more than

---

[22] *See, e.g.*, https://en.wikipedia.org/wiki/Credit_card#Secured_credit_cards ("A secured credit card is a type of credit card secured by a deposit account owned by the cardholder. Typically, the cardholder must deposit between 100% and 200% of the total amount of credit desired. … [¶] …The advantage of the secured card for an individual with negative or no credit history is that most companies report regularly to the major credit bureaus. This allows building a positive credit history. [¶] Although the deposit is in the hands of the credit card issuer as security in the event of default by the consumer, the deposit will not be debited simply for missing one or two payments. Usually the deposit is only used as an offset when the account is closed, either at the request of the customer or due to severe delinquency (150 to 180 days).").

[23] *See* https://en.wikipedia.org/wiki/Credit_card#Secured_credit_cards ("Credit card issuers offer [secured credit cards] because they have noticed that delinquencies were notably reduced when the customer perceives something to lose if the balance is not repaid.").

confirm the parties' rights under existing state and federal law. Under both California's Arbitration Act and the FAA, a court may grant provisional remedies necessary to preserve the status quo and the meaningfulness of the arbitration process. *See* Code Civ. Proc., § 1281.8; *Toyo Tire Holdings of Am., Inc. v. Continental Tire North Am., Inc.*, 609 F.3d 975, 981-82 (9th Cir. 2010). Likewise, under both state and federal law, parties may employ all the normal judicial means of enforcing a judgment after an arbitration award has been confirmed and entered as a court judgment. Code Civ. Proc., § 1287.4; 9 U.S.C. § 13. "[A]n arbitration agreement is not substantively unconscionable simply because it confirms the parties' ability to invoke undisputed statutory rights." *Baltazar*, 62 Cal.4th at 1247-48.

Finally, subparagraph c preserves the parties' rights to exercise "remedies to preserve, foreclose, or obtain possession of real or personal property." Though Youssofi emphasizes this provision, he fails to explain how he could possibly have been affected by it. His credit card account was secured by a deposit account, not any real or personal property. *See* E.R. 150, 162. So Wells Fargo never had any right to preserve, foreclose or obtain possession of any of Youssofi's real or personal property. An arbitration clause which is otherwise enforceable cannot be rendered fatally substantively unconscionable by a plainly inapplicable provision.

Furthermore, there is a reasonable justification for the provision. As the California Legislature has recognized, "foreclosure of liens [and] unlawful detainer" are

"areas [particularly] involving court supervision or jurisdiction" and thus appropriately exempted from arbitration. Code Civ. Proc., § 1298(d). California has enacted a host of procedural statutes and anti-deficiency laws governing foreclosure of real and personal property. *See* Code Civ. Proc., §§ 580a-580e, 726; Civ. Code, §§ 2923.5-2924*l*, 2983.2, 2983.3, 2987. How those procedural and substantive statutes apply to an arbitration remains an unresolved issue.[24] The same is true of California's regulation of gaining possession of real property. Prosecution of an unlawful detainer action in court is the only statutorily authorized procedure for doing so. Self-help is strictly forbidden. *Glass v. Najafi*, 78 Cal.App.4th 45, 48-49 (2000). Whether arbitration is a permissible alternative has yet to be decided. That legal uncertainty provides ample justification for exempting these "areas involving court supervision or jurisdiction" from arbitration. Code Civ. Proc., § 1298(d); *see Meyers v. Univest Home Loan, Inc*., 1993 WL 307747, at *4 (N.D. Cal. 1993).

### (c) The Small Claims Court Carve Out Provides Balances Out Any Remaining Lack Of Mutuality

The Customer Agreement's arbitration clause also provides that despite the parties' agreement to arbitrate any dispute, both parties "retain the right to pursue in small claims court any Dispute that is within that court's jurisdiction." E.R. 157

---

[24] There is no published case law authority, for example, deciding whether an arbitration is an "action" for purposes of the one-form-of-action rule under Code of Civil Procedure section 726, nor whether issuance or confirmation of an arbitration award constitutes a bindng election of judicial foreclosure as the remedy for breach of a real estate-secured obligation.

¶ 33(a); 166 ¶ 31(a), 174 ¶ 31(a), 185 ¶ 31(a), 199 ¶ 31(a). The district court correctly held that this provision "comports with the modicum of bilaterality requirement and defeats Plaintiff's argument" that the clause is substantively unconscionable. E.R. 45:21-27.

Although the provision is nominally bilateral, as a practical matter it benefits consumers, not Wells Fargo because, under California law, Wells Fargo cannot file more than two small claims court suits per year seeking more than $2,500. Code Civ. Proc., § 116.231(a).

To be sure, small claims court suits are limited. They do not permit lawyer representation or discovery. Code Civ. Proc., §§ 116.310(b), 116.530(a). There is no right to a jury trial, and the plaintiff cannot appeal. Code Civ. Proc., § 116.710(a); *Crouchman v. Superior Court*, 45 Cal.3d 1167, 1172-73 (1988). Also, an individual plaintiff cannot recover more than $10,000 in damages or, with some exceptions, an injunction. Code Civ. Proc., §§ 116.220(a)(5), 116.221.

But Youssofi commits two errors in arguing that these limitations prevent the small claims court alternative from satisfying the "modicum of bilaterality" require-ment. The first error lies in Youssofi's comparison of small claims court limitations with litigation procedures and remedies available in the superior court's unlimited jurisdiction or in federal district court—the forums that Youssofi wrongly claims that Wells Fargo reserved for all of its litigation. *See* AOB 42-47. In fact, most consumer

debt collection suits—the type of dispute that Wells Fargo was compelled to exclude from arbitration—would be brought in the superior court's limited jurisdiction and so be subject to restrictions (albeit less stringent) on discovery, remedies and appeals. Code Civ. Proc., §§ 85(a), 86(a)(1), 94, 904.2; Cal. Rules of Court, rules 8.800-8.891, 8.1000-8.1018.

Youssofi's second error lies in faulting the small claims court remedy as providing poor redress for the particular type of suit he has brought. *See, e.g.,* AOB 44 ("The inability to obtain discovery in a TCPA case is fatal to his claim because most of the evidence is in Appellee's possession."). Under California law, "unconscionability is determined as of the time the contract was entered into, not in light of subsequent events." *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1324 (2005) (citation omitted); *see also* Civ. Code, § 1670.5(a).

At the time Youssofi entered into the credit card contract, neither party could predict that he would later bring a TCPA claim seeking an injunction and more than $60,000 in damages. *See* E.R. 208:7-10, 210:4-12. Instead, viewed at that time, the most likely disputes that a credit card customer would have are small dollar contract disputes about incorrect bills or improper fees—exactly the sort of controversy that small claims court regularly handles and to which its procedures are well adapted. So the district court did not err in concluding that the small claims court exclusion offered consumers an alternative to arbitration fitted to their likely needs, thus balancing out

any "advantage" Wells Fargo may have gained by the forced exemption of consumer debt collection disputes from arbitration.

In short, the district court correctly concluded that the Customer Agreement's arbitration clause satisfied California's "modicum of bilaterality" requirement. Wells Fargo has not chosen for itself the "advantages" of litigation while relegating consumers to the "disadvantages" of arbitration. Instead, Wells Fargo has exempted from arbitration only those disputes that (a) it cannot arbitrate due to the AAA moratorium, which was implemented to protect consumers, or (b) it cannot safely arbitrate due to the uncertain impact of California's consumer protection laws. Any resulting asymmetry is offset by the fact that consumers are permitted to bring in small claims court the types of disputes that they are most likely to have.

## 2. The AAA's Rules Regarding Discovery Are Not Substantively Unconscionable

Youssofi next claims that the Customer Agreement's arbitration clause is substantively unconscionable because "it limits Appellant's right to discovery." AOB 47-55.

The district court correctly rejected this attack. E.R. 45:12-20. The arbitration clause, itself, says nothing about discovery. *See* AOB 48. Instead, it simply provides that an arbitration "shall be administered" "according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes" promulgated by the AAA. E.R. 157 ¶ 33(b); 166 ¶ 31(b), 174 ¶ 31(b), 185 ¶ 31(b), 199 ¶ 31(b).

The AAA's Supplemental Procedures for Consumer Related Disputes contain no provision addressing discovery. Rule R-22 of the Commercial Arbitration Rules requires the parties to exchange documents on which they intend to rely and further provides:

> The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

AAA Commercial Arbitration Rules, R-22(a).

Ignoring this rule which is part of the Commercial Arbitration Rules that the Customer Agreement's arbitration clause expressly references, Youssofi quotes a different Rule R-22 which is part of the AAA's Consumer Arbitration Rules—rules that the arbitration clause does *not* reference. AOB 48-49. Even assuming that the Consumer Arbitration Rules would apply even if unmentioned in the arbitration clause, the Consumer Rules' R-22 provides for an exchange of documents, exhibits and other information as well as identification of witnesses. Consumer Arbitration Rules, rule R-22(a), (b). Consumer Arbitration Rule R-22(c) further provides that no other exchange of information is contemplated "unless an arbitrator determines further information exchange is needed to provide a fundamentally fair process."

In *Poublon*, this Court recently set out the standards for determining whether discovery restrictions render an employment contract's arbitration clause substantively unconscionable:

> The California Supreme Court has made clear that "limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.' " Because "arbitration is meant to be a streamlined procedure," parties may agree to limit the number of depositions and impose other restrictions. But while limitations on discovery are permissible in an arbitration agreement, California has made clear that a court must balance the "desirable simplicity" of limiting discovery with employees' need for discovery "sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review."

> In finding this balance, California courts look to the amount of discovery permitted, the standard for obtaining additional discovery, and the evidence presented by plaintiffs that the discovery limitations will prevent them from adequately arbitrating their statutory claims.

*Poublon*, 846 F.3d at 1270 (citations omitted).

Applying this test, R-22 of the Consumer Arbitration Rules and certainly R-22 of the Commercial Arbitration Rules easily pass muster.

First, both rules provide for an exchange of documents and witness identities. For most small dollar consumer disputes, that is enough, "keeping in mind that arbitration must remain a fast and economical process." Consumer Arbitration Rule R-22(a).

Second, both rules also provide for additional "exchange of information" if the arbitrator determines it is "needed to provide a fundamentally fair process," Consumer Arbitration Rules, R-22(c), or to "safeguard[] each party's opportunity to fairly present its claims and defenses," Commercial Arbitration Rules, R-22(a). These rules set a low "good cause" standard for added discovery, not the improperly high hurdle of "compelling need" or impossibility of a fair hearing otherwise, as was true in *Fitz v. NCR Corp.,* 118 Cal.App.4th 702, 717-18 (2004), a case that Youssofi heavily relies on. *See* AOB 47, 52. In this critical respect, this case is unlike *Fitz*, but rather is similar to *Poublon*, in which this Court held the discovery limitation was not unconscionable, since Youssofi, like "Poublon[,] can obtain additional discovery merely by showing good cause, which would include a demonstrated need for discovery 'sufficient to adequately arbitrate' her claim." *Poublon*, 846 F.3d at 1271; *see also Moule v. United Parcel Serv. Co.,* 2016 WL 3648961, at *9 (E.D. Cal. 2016) ("Because the AAA Rules allow the arbitrator to authorize discovery, either on his own initiative or by a request—without a showing of either a 'substantial need' that a fair hearing would be 'impossible' without such discovery—the discovery provision is not substantively unconscionable."); *Borgarding v. JPMorgan Chase Bank,* 2016 WL 8904413, at *6 (C.D. Cal. 2016) (same).

Third, Youssofi has not shown that the discovery limitations will prevent him from adequately arbitrating his claims. He argues that "most of the evidence" he

needs to prove his claim is in Wells Fargo's possession": "the type of dialer used, the collection notes, electronic data relating to [his] account and calls, and the information relating to the frequency and timing of telephone calls." AOB 51. Even assuming Youssofi needed all this information to fairly arbitrate his case, it is all documentary information, with the possible exception of "the type of dialer used." AAA's rules specifically contemplate exchange of documentary information. They do not forbid other types of information "exchanges" but rather leave the means of exchange up to the arbitrator's discretion.[25] Youssofi has not introduced any evidence to show that an AAA arbitrator would be required to, or in the exercise of his or her discretion is likely to, deny Youssofi adequate discovery of any of this information that he asserts is essential to his ability to prove his claim in arbitration.

Throughout his argument, Youssofi cites only employment contract cases, claiming that "he need not cite to any cases outside of the employment context

---

[25] Youssofi makes much of the fact that neither the Customer Agreement's arbitration clause nor the AAA's rules expressly permit him to take any deposition or send an interrogatory or request for admission. *See* AOB 49 ("Rule R-22 says nothing about depositions, interrogatories, document requests or even the use of an expert witness.") But he barks up the wrong tree. Arbitration need not allow discovery by the means that the Federal Rules of Civil Procedure employ. The AAA's rules provide for "exchanges of information" without specifying by what mechanism that exchange will occur—and thus leaving the means of exchange to the parties' agreement or arbitrator's discretion. There is nothing unconscionable in allowing the parties or arbitrator free to craft procedures for exchanging information that are cheaper and more efficient than those specified in the Federal Rules—and free to adopt the Federal Rules' procedures when no better alternative appears.

because it makes no difference whether the case is a consumer case, a commercial case, or an employment case, since the unconscionability analysis is applied equally to commercial, consumer, and employment contracts." AOB 54. For this proposition he cites one decision: *Walnut Producers v. Diamond Foods, Inc.*, 187 Cal.App.4th 634, 644 (2010). AOB 54. But *Walnut Producers* actually undermines, rather than supports, Youssofi's argument. While it held that "the same standard for determining unconscionability applies to all types of contracts," it also pointed out that "unconscionability is determined based on the unique factual situations of each case." *Id.* Thus, even though the same unconscionability standards apply, the "unique factual situations" of employment contracts call for different results than in other types of contractual settings, such as the credit card agreements at issue in this case. The California Supreme Court so held in *Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal.4th 495, 506 (2005) (refusing to apply *Armendariz's* requirements to an insurance bad faith claim).

For all of these reasons, Youssofi falls far short of showing that the AAA rules' restrictions on discovery render arbitration of his TCPA claim under those rules substantively unconscionable.

### 3. Arbitration Is Not Unconscionable

Youssofi ends his unconscionability argument with a potpourri of his prior arguments with a dash of the CFPB's study of consumer arbitration thrown in to spice the stew. AOB 55-57.

He begins by citing the CFPB study for the proposition that consumers file fewer arbitration demands than lawsuits, contrasting this supposed advantage to Wells Fargo against its "using the judicial forum as its sword to numerous collection cases against consumers." AOB 55-56. Both parts of this supposed comparison are fatally flawed.

As others have already shown, the CFPB's data is flawed.[26] Also, it does not support Youssofi's assertion that an arbitration clause deters consumers from seeking redress. At most, the data shows that during a two-year period consumers in six product markets filed fewer arbitration demands than lawsuits. CFPB, Arbitration Study: Report to Congress pursuant to the Dodd-Frank Act, § 1.4.3, p. 11, § 6.2.1, p. 6 (March 2015) ("CFPB Rept."). The CFPB study does not attempt to explain why. It does not track whether the filings were against the same or similar defendants.[27]

---

[26] *See* Jason Scott Johnston & Todd Zywicki, The Consumer Financial Protection Bureau's Arbitration Study: A Summary & Critique, 35 No. 5 Banking & Fin. Services Pol'y Rep., 9 (May 2016); Ramona L. Lampley, The CFPB Anti-Arbitration Proposal: Let's Just Give Arbitration A Chance, 48 St. Mary's L.J. 313 (2016).

[27] The CFPB did not track the types of claims or types of defendants targeted by the individual suits or arbitration demands it counted. It did track the subject matter of class actions it counted. "Of the federal statutory claims, claims under the FDCPA

Thus, the numerical disparity alone does not show that an arbitration clause deters consumers from seeking redress in general, much less with respect to Wells Fargo in particular.

More importantly, Youssofi's assertion that arbitration deters consumers from pursuing claims cannot support a finding of substantive unconscionability because "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable ....' " *Concepcion*, 563 U.S. at 341; *see also Tompkins v. 23andMe, Inc.,* 840 F.3d 1016, 1022-23 (9th Cir. 2016); *Coneff v. AT & T Corp.,* 673 F.3d 1155, 1158-60 (9th Cir. 2012).[28]

Youssofi next complains that the arbitration clause is unfair because Wells Fargo chose AAA as its preferred arbitration forum. According to Youssofi, other arbitration forums, such as JAMS, "have rules that are a little more evenhanded than the AAA rules." AOB 56. Youssofi then returns to his claim that Rule R-22 unduly restricts discovery. *Id.*

---

were by far the most common, appearing in 41.3% of all of the class complaints ...." CFPB Rept., § 6.5.1, p. 19. Often, third party debt collectors, subject to the FDCPA, are not parties to any contract with the debtor and so cannot compel arbitration. Thus, a plausible explanation of the disparity in filings is simply that consumers have more complaints about debt collectors than creditors.

[28] *See also THI of New Mexico at Hobbs Ctr., LLC v. Patton,* 741 F.3d 1162, 1167 (10th Cir. 2014) ("[J]ust as the FAA preempts a state statute that is predicated on the view that arbitration is an inferior means of vindicating rights, it also preempts state common law—including the law regarding unconscionability—that bars an arbitration agreement because of the same view.").

For the reasons already stated, Rule R-22 is not substantively unconscionable. *See* pp. 44-49, above. Youssofi's argument to the contrary gains no added force when rephrased as an attack on Wells Fargo's selection of AAA as its preferred arbitration administrator.[29] *See Lewis v. Prudential-Bache Sec., Inc.,* 179 Cal.App.3d 935, 945 (1986) ("We can conceive of no possible challenge Lewis can legitimately raise to this impartial alternate arbiter [the AAA].").

Finally, Youssofi reprises his argument that it is unfair for Wells Fargo to "unilaterally" deprive him of his First Amendment right to sue in court. AOB 57. As already shown, private agreements for arbitration of private disputes do not offend the First Amendment or deprive anyone of constitutionally protected rights. *See* pp. 17-28 above. Moreover, the arbitration clause could not be held substantively unconscionable on this ground since Youssofi's argument clearly "rel[ies] on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable ....' " *Concepcion*, 563 U.S. at 341.

In short, as the district court correctly held, the Customer Agreement's arbitration clause is not substantively unconscionable. So there is no need to address California's sliding scale or balancing of procedural and substantive unconscionability. E.R. 45:21-46:3. The arbitration clause is not unconscionable. Rather, it is fully

---

[29] Youssofi's argument also overlooks the fact that the arbitration clause permits use of arbitration administrators other than AAA upon the parties' mutual agreement. *See* E.R. 157 ¶ 33(b); 166 ¶ 31(b), 174 ¶ 31(b), 185 ¶ 31(b), 199 ¶ 31(b).

enforceable.  So the district court correctly compelled arbitration in accordance with its provisions.

## IX.

## CONCLUSION

For the reasons stated above, the Court should affirm the order compelling arbitration and the ensuing judgment of dismissal.

DATED:  August 17, 2017

<div style="margin-left:40%">

SEVERSON & WERSON
A Professional Corporation


By:   *_____*
               */s/ Jan T. Chilton*
               Jan T. Chilton

Attorneys for Defendant and Appellee
Wells Fargo Bank, N.A.

</div>

# STATEMENT OF RELATED CASES

*Roberts v. AT&T Mobility*, No. 16-16915 and *Ziba Youssofi v. Credit One Bank*,

No. 17-55275 are related to this appeal in that they raise the same issue about waiver

of First Amendment rights by agreeing to arbitration.

Dated:  August 17, 2017.

                      */s/ Jan T. Chilton*
                         Jan T. Chilton

# CERTIFICATE OF COMPLIANCE
## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements
[Fed. R. App. P. 32(a)(7)(B)]

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 12,630 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Windows 2010, in Times New Roman, 14 point type.

Dated:  August 17, 2017.

*/s/ Jan T. Chilton*
Jan T. Chilton

## <u>CERTIFICATE OF SERVICE</u>

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

On August 17, 2017, I served true copies of the following document(s):

### APPELLEE'S BRIEF

on the interested parties in this action as follows:

Alex Asjl Mashiri                 *Attorney for Plaintiff and Appellant*
Mashiri Law Firm
11251 Rancho Carmel Dr.
San Diego, CA 92150

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 17, 2017, at San Francisco, California.

*/s/ Chilaren Kada*
Chilaren Kada